# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs February 17, 2005

## KAREN ANN WALTON v. WILLIAM ARTHUR TICE

**Appeal from the Circuit Court for Knox County**
**No. 63039     Bill Swann, Judge**

---

**No. E2004-01733-COA-R3-CV - FILED JUNE 13, 2005**

---

Karen Ann Walton ("Mother") and William Arthur Tice ("Father") are the parents of a minor child ("the Child"). Mother and Father never married, but joined in filing a Petition for Legitimation averring that Father was the Child's natural parent. In 1994, the Trial Court entered an order finding the child support guidelines inapplicable due to the extensive amount of co-parenting time the Child spent with each parent. In 2003, Mother filed a petition seeking, in part, to modify Father's child support obligation. The case was tried and the Trial Court entered an order finding *inter alia*, that Father, although unemployed, "has the ability to earn substantial income in the amount of One Hundred and Sixty-Two Thousand Dollars ($162,000) per year and child support shall be set in the Guidelines amount of Two Thousand and Fifteen Dollars ($2,015.00) per month." Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL and SHARON G. LEE, J.J., joined.

M. Jeffrey Whitt, Knoxville, Tennessee, for the Appellant, William Arthur Tice.

Virginia A. Schwamm, Knoxville, Tennessee, for the Appellee, Karen Ann Walton.

# OPINION

## Background

In March of 2003, Mother filed a Petition to Modify seeking, in part, a modification of Father's child support obligation based upon a change in the amount of time Father was spending with the Child. A trial management conference was held on August 4, 2003, after which the Trial Court entered an order, holding, *inter alia*, that Father shall pay to Mother $370 per month as child support, an amount "set with no presumption of correctness and . . . only in place until further hearing by the Child Support Referee . . . ." The order stated that the amount of child support "may be modified by the Referee either retroactively and/or prospectively as the Referee deems necessary and appropriate." The order also stated that "[a]ll other matters touching upon support for the parties' minor child shall be reserved to the Referee for further hearing."

The Child Support Referee ("the Referee") heard the case on August 19, 2003. Prior to the presentation of proof, the Referee imposed Rule 37 sanctions on Father for his failure to comply with discovery. These sanctions prevented Father from presenting proof on any matters for which he had failed to produce requested discovery.

Mother testified at the August 19, 2003 hearing. She testified that the Child is thirteen years old and began living with Mother in November of 2002. Mother testified that she previously was the Chief Financial Officer for Father's company, Tice Engineering & Sales. Mother testified that Father's base salary was $150,000 per year with an additional allowance of $1,000 per month for a car allowance. Mother testified that Father owns stock and estimated that based on the average price of the stock over the last year, Father's stock is worth over a million dollars. Mother further testified that coverage for her health insurance through her current employer costs $386 and it would cost an additional $425 for her to add coverage for the Child making a total premium of $812 per month. Mother testified that the Child was diagnosed with Juvenile Diabetes in December of 2000. Mother testified she has incurred approximately $2,400 in medical expenses for the Child.

The Referee entered Findings and Recommendations on September 18, 2003, finding, *inter alia*, that the Child began living with Mother in November of 2002, that Father has paid no support for the Child to Mother, and that an arrearage in child support existed less $320 paid by Father at the hearing. The Referee also found, *inter alia*, that "[b]ased upon the proof, the appropriate amount of child support is Thirty-Two Hundred Dollars ($3,200.00) per month." Father appealed the Referee's Findings and Recommendations to the Trial Court. The Trial Court heard Father's appeal and entered its Order on November 4, 2003, affirming "[t]he Findings and Recommendations of the Referee entered September 18, 2003 . . ." in all respects. The November 4 Order, however, remanded the case for a *de novo* hearing before the Referee to allow Father to present proof of his economic circumstances.

The Referee again heard the case on October 28, 2003, and Father testified at this hearing. Father testified he currently has no salary. He testified that the last time he received a salary was at the end of 2002 and it was from Tice Technology. Father explained that Tice Technology is a public company. Father testified that "[f]or the last 33 years I've managed Tice Engineering & Sales and been involved in the apparel industry." He testified that he obtained approximately 25 patents during his career. Father explained that he closed out Tice Engineering & Sales, his original company, and formed Tice Technology, which is a holding company that has Tice Engineering & Sales as a subsidiary. Father testified that all assets of Tice Engineering were sold off and its only function is to receive royalties from Brother Industrial Sewing. Father testified he is "[w]orking on some projects, but not on any jobs," and is receiving no income. Father testified that when he was working, he made $150,000 a year. Father testified he will be 60 on his next birthday, and that he has a back problem and high blood pressure.

Father testified that he loaned his corporation $750,000 over a period of years and that he received stock in lieu of repayment. Father owns approximately 6 million shares of stock in Tice Technology. Father testified he is limited in the number of shares of stock he is allowed to sell each quarter and further testified that the stock is restricted and that currently the bid price on the stock is seven cents a share.

Father testified that Tice Technology is working on a project to decontaminate buildings of things such as Legionnaires' disease and anthrax, but testified he is no longer involved with running Tice or making decisions. Father further testified he also has "two other projects that I'm working on that, you know, could become fruitful."

Father testified he spent the money in his 401(k). When asked, Father testified he received a check for cashing out his 401(k), but cannot remember receiving any other documents and stated there was no interest or penalty for withdrawing the money from his 401(k).

Father testified that he has not filed tax returns with the IRS since 1999. He testified he never received a W-2 or 1099 form for the year 2003 from Tice Technology. Father testified that the only document he has showing any income for 2003 is a document showing he sold stock. Father produced nothing showing his income for 2002, despite being asked during discovery for such information. Father testified that since November of 2002, he has paid only $570 in child support.

Father and his wife now live with his sister and her husband, and their mother. Neither Father nor his wife pay his sister anything for living with her. Father's wife is not employed. Father's sister testified that she supplies food, electricity, and telephone for Father. Father testified his Mercedes was repossessed and sold and that he owes additional money on it. He testified he has credit card debt. He also testified that his home on Kesterbrooke Boulevard in Knoxville was foreclosed earlier in the year and that he sold off his household furnishings for roughly $30,000 and used the money "to pay bills and things of that nature."

The Referee entered Findings and Recommendations on December 9, 2003, finding, *inter alia*, that Father "has the ability to earn substantial income in the amount of One Hundred and Sixty-Two Thousand Dollars ($162,000) per year and child support shall be set in the Guidelines amount of Two Thousand and Fifteen Dollars ($2,015.00) per month." The Referee also found an arrearage in child support of $38,800.00. The Referee stated:

Father has the ability to earn substantially more than he's earning now, which is zero.

And one of the factors that has bothered me throughout the case is that all Father has paid is the $570. He hasn't made the good-faith effort or showing that he is even trying to comply with the lower amount of child support that was ordered.

Father has not testified that he is applying for a job anywhere. And while I imagine Mother would certainly argue, I'm sure, that he's underemployed if he's working at McDonald's, at least it would show her that he was making the effort to try to at least pay what he's supposed to pay with child support. Even 21 percent at McDonald's is better than nothing.

Father says he's got some projects going. I don't doubt that. I think that Father has the ability. He's obviously intelligent, obviously well versed in business. He has displayed through his testimony that he has great knowledge on patents and how to make various processes to make money. He has that ability.

Now, the fact that he is not employed right now and that he is not looking right now tells me that he believes that whatever he is involved in is going to make more than what he's made in the past.

What the guidelines tell me is when I can't find out how much somebody should pay, then I have to look back at what they have earned to get the determination for how much they should pay. And the testimony in this case is clear that he is capable of making $162,000 a year. And that will be the basis for his child support. That's less than what I set last time.

Father appealed the December 9 Findings and Recommendations to the Trial Court. The Trial Court heard the case and by Order entered February 17, 2004, affirmed the Findings and Recommendations entered on December 9, 2003, in all respects.

On February 20, 2004, the Referee entered further Findings and Recommendations that recommended, *inter alia*, that Father be incarcerated for being "in willful contempt of the Orders of this Court for his failure to pay ongoing child support and arrearages." By Order entered May 3, 2004, the Trial Court ordered, *inter alia*, that Father be released and placed on electronic monitoring and allowed to leave his residence to work specified hours at Halls Collision.

Father appeals to this Court the Trial Court's February 17, 2004 Order affirming the Referee's Findings and Recommendations entered on December 9, 2003.

**Discussion**

Father raises one issue for review: whether the evidence preponderates against the Trial Court's finding that his child support should be based upon an income of $162,000 per year. Mother raises an issue regarding whether this a frivolous appeal and requests an award of fees and costs.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first discuss whether the evidence preponderates against the Trial Court's finding that child support should be based upon an income of $162,000 per year. In pertinent part, Tenn. Code Ann. § 36-5-101 provides that courts shall apply the child support guidelines as a rebuttable presumption in all child support cases. Tenn. Code Ann. § 36-5-101(e)(2) (2001). The child support guidelines provide, in pertinent part: "If an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(d) (2003). "The determination of whether an obligor is willfully and voluntarily unemployed or underemployed is dependent upon the factual background of the case. Willful and voluntary unemployment or underemployment does not occur solely in cases where the obligor becomes unemployed or underemployed with the intent to avoid child support obligations." *Anness v. Chapdelaine*, No. M2000-01792-COA-R3-CV, 2001 Tenn. App. LEXIS 679, at *8 (Tenn. Ct. App. Sept. 14, 2001), *no appl. perm. appeal filed* (citations omitted). "There may be an implicit finding of willful and voluntary unemployment or underemployment on the basis of the trial court's ultimate decision." *Id*. at *7.

Father asserts that "he was not willfully or voluntarily underemployed as per the logic adopted in *Brooks v. Brooks*," because, in contrast to the *Brooks* obligor, Father did not liquidate his business in an effort to avoid child support and his standard of living has changed during his period of unemployment. *Brooks v. Brooks*, 992 S.W.2d 403 (Tenn. 1999). Father also argues that the Trial Court made no finding that he was willfully unemployed. Father requests that this Court look to the factors proposed by Justice Birch in his dissent in *Brooks* for determining if an obligor is willfully and voluntarily unemployed or underemployed in analyzing this case. Those factors include:

> (1) the prevailing wage rates in the local area for various occupations; (2) the special skills and training possessed by the parent; (3) the availability of employment for which the parent is qualified; (4) whether the underemployment represents a bona

fide career change that outweighs the adverse effect of the diminished income; and (5) whether a parents (sic) underemployment is temporary and will ultimately lead to an increase in income.

*Brooks*, 992 S.W.2d at 409 (Birch, J., dissenting).

Our review of the record reveals that Father is unemployed and has an income of zero. There is no evidence of any attempt by Father to secure employment of any kind. The record is devoid of evidence that would tend to show even that Father's unemployment is merely temporary or is a bona fide career change. Rather, the evidence shows, and the Trial Court found, that "Father has the ability. He's obviously intelligent, obviously well versed in business. He has displayed through his testimony that he has great knowledge on patents and how to make various processes to make money." While Father testified that he is working on some projects that "could become fruitful," the reality is that Father has no income and the proof shows no effort made by Father to change this situation. Father testified that he is 60 years old and has a back problem and high blood pressure. However, the proof does not show that Father is incapable of working. This Court declines to take judicial notice that a 60 year old, especially one with Father's knowledge and experience, cannot obtain and maintain gainful employment. In addition, the Trial Court found that Father is not making a "good-faith effort or showing that he is even trying to comply with the lower amount of child support that was ordered." Father testified that although he sold household furnishings for approximately $30,000 and also cashed out monies in his 401(k) account, he still made no effort to pay child support as ordered.

Even if we utilize the factors proposed by Justice Birch in analyzing this case, the record shows that Father is willfully and voluntarily unemployed. Father is not underemployed. Instead, Father is completely unemployed and has made no showing of any attempt to change this situation. Father presented no proof regarding prevailing wage rates in the community, the availability of employment, a bona fide career change, or a temporary situation that will lead to future increased income. Father simply testified regarding some "projects" that may, or may not make money at some future date. In addition, the proof in the record shows that Father possesses knowledge and skills in business, and Father presented no proof that he cannot use his knowledge and skills to obtain gainful employment. The evidence shows that Father's most recent yearly income was $162,000. The evidence does not preponderate against the findings of the Trial Court.

We find that the Trial Court implicitly found that Father was willfully and voluntarily unemployed as is clearly reflected in the Trial Court's ultimate decision. The evidence does not preponderate against this finding. As such, the Trial Court did not err in setting Father's child support obligation based upon an income of $162,000 per year.

We next consider Mother's issue regarding whether this is a frivolous appeal. "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that [an appeal] can ever succeed." *Industrial Dev. Bd. of the City of Tullahoma v. Hancock*, 901 S.W.2d

382, 385 (Tenn. Ct. App. 1995) (quoting *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202 (Tenn. 1978)). Exercising our discretion, we decline to hold this is a frivolous appeal, and further decline to award Mother any attorney fees and costs incurred by this appeal.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, William Arthur Tice, and his surety.

_____
D. MICHAEL SWINEY, JUDGE