IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 23, 2009 Session

**JAMES JEFFREY JACKSON**
**v.**
**KRISTI LYN WILLIAMS**

**An Appeal from the Chancery Court for Dyer County**
**No. 03C236     Donald P. Harris, Senior Judge**

---

**No. W2008-00148-COA-R3-CV - Filed September 18, 2009**

---

This is a post-divorce petition for contempt and to modify a parenting plan. The parties divorced when their son was about three years old. They were awarded joint custody of their son and the mother was designated as the primary residential parent. Many disputes ensued. The father filed a contempt petition against the mother, claiming that she was in contempt for failing to schedule compensatory weekend parenting time for the father after the child spent one of his weekends with the mother, and for causing the father to miss six scheduled telephone calls with their son over an eight-month period. The father asserted that this and other conduct showed that the mother intended to alienate the child from him, and on this basis filed a petition to modify the parenting plan. After a hearing, the trial court denied the father's petitions for contempt and for modification. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W. S., and DAVID R. FARMER, J., joined.

Thomas E. Weakley, Dyersburg, Tennessee, for the appellant, James Jeffery Jackson.

Dean P. Dedmon and William Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellee, Kristi Lyn Williams.

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

This is the second post-divorce appeal in this case. Petitioner/Appellant James Jeffrey Jackson ("Father") and Respondent/Appellee Kristi Lyn Williams ("Mother") had a son, Alec (born August 15, 2000), during their marriage. The parties were divorced by final decree entered on March 10, 2004. In the final decree of divorce, the trial court awarded the parties joint custody of

Alec and designated Mother as the primary residential parent. A detailed parenting plan was entered establishing a schedule for the parties' residential parenting time and setting forth the standard parenting orders. *See Hollandsworth v. Jackson*, No. W2005-02091-COA-R3-CV, 2006 WL 3371137, at *1 (Tenn. Ct. App. Nov. 21, 2006).

On October 29, 2004, Father filed a petition to modify custody. In response, Mother filed a contempt petition against Father. In Father's petition, he alleged that Mother had interfered with a telephone conversation between Father and Alec and generally engaged in a course of hostility against Father, asserting that this amounted to a material change in circumstances. After a lengthy hearing, the trial court denied Father's petition to modify custody and also denied Mother's contempt petition against Father. On August 24, 2005, the trial court entered an order stating that both parties had engaged in inappropriate behavior and had failed to foster a good relationship between the child and the other parent, but it concluded that these circumstances existed at the time of the final decree of divorce and that there was no material change in circumstances. Therefore, the trial court declined to modify the parenting plan. Father appealed.

Meanwhile, while the first appeal was pending, Father filed a contempt petition against Mother. Father claimed that Mother violated the trial court's previous orders by failing to permit Father to have residential parenting time on the first weekend in September 2005, which was Labor Day weekend. Father also asserted that Mother did not comply with the original order granting Father reasonable telephone communication. On October 27, 2005, the trial court entered an order finding that Mother was not in contempt of court. However, in an attempt to remedy the problems with the telephone communication between Father and Alec, the trial court entered an order giving Father the right to have telephone communication with Alec each Tuesday and Thursday evening at 8:00 p.m.

On June 9, 2006, also while Father's first appeal was pending, Father filed a petition, *pro se*, for "Contempt and [$]100,000,000 Million for Slander and False Allegations" against Mother. Father alleged that Mother "and her horde of family and friends" committed slander and made false allegations against him, and that Mother had not followed the telephone schedule established in the trial court's October 2005 order. On September 26, 2006, Mother filed a motion to dismiss Father's complaint for failure to state a claim upon which relief could be granted and for failure to comply with the rules governing the issuance of subpoenas.[1]

On November 21, 2006, this Court filed its opinion in the first appeal, upholding the trial court's decision on Father's petition to modify custody and remanding the case for further proceedings.[2] *Id.* at *4. The appellate court commented: "It is clear that Alec is caught in the cross-fire of Mother and Father's on-going and escalating hostility toward each other. Clearly, this is not in Alec's best interest." *Id.* at *3.

---

[1] Judge R. Lee Moore, Jr., who had presided over the previous proceedings, recused himself. In September 2006, the Honorable Donald P. Harris, Senior Judge, was designated to preside over the proceedings.

[2] The case was remanded for a determination regarding the amount of Father's obligation for outstanding medical expenses in light of amounts that he had already paid. *See Hollandsworth*, 2006 WL 3371137, at *3-4.

A week later, on November 28, 2006, Father filed an additional *pro se* pleading, entitled "Petition for Modification of Custody and Contempt." This petition stated simply that Father "will show this Court that their [sic] has been a material change in circumstance that would warrant a change of custody," and that Mother "is in contempt of this Court." On February 2, 2007, Mother filed a motion to dismiss Father's petition and hold him in contempt of court. She claimed that Father's petition lacked the requisite specificity and was a continuation of the same allegations raised in his prior petition, filed because he was unhappy with the outcome of the first appeal and other rulings in Mother's favor. Mother asserted that Father's petition was filed to harass her and cause needless litigation. She later amended her petition to include a request for attorney's fees pursuant to Tennessee Code Annotated § 36-5-103(c).

On February 12, 2007, the trial court held a hearing in the matter. Our appellate record does not include a transcript of that hearing. Father was instructed to amend his motions to include a more specific statement to support the relief sought; all motions were held in abeyance pending Father's filing of a more specific statement.[3] Accordingly, on February 27, 2007, Father filed an "Amended Motion for Modification of Custody and Contempt," alleging that Mother "has continued on a course of conduct toward alienating his relationship with the parties' minor child, Alec." Father alleged that Mother continued to make false allegations against him, would not respond to his request to exchange Alec at a location other than a law enforcement agency, would not respond to his request to attend counseling regarding Alec, refused to communicate with Father, denied him telephone communication with Alec from time to time, failed to inform him of medical or dental services related to Alec, and ran a newspaper birthday announcement for Alec that identified Mother's present husband as Alec's father without mentioning Father.

Also on February 27, 2007, Father filed an "Amended Motion For Contempt and [$]100,000,000 Million for Slander and False Allegations." This motion stated that Mother was in contempt of the trial court's orders for not allowing Father a "visitation make up weekend" with Alec to compensate for Father's regular weekend with Alec that was missed on President's Day weekend because that was Mother's designated holiday. The motion also asserted that Mother failed to allow Father his court-ordered telephone communication on six different occasions. On July 10, 2007, Mother filed responses to Father's amended motions.

On October 9, 2007, the trial court held a hearing in the matter. Father was represented by counsel with respect only to contempt-related issues. Father continued to represent himself with respect to the claim for $100,000,000 for slander/false allegations and his petition to modify the parenting plan. At the outset of the hearing, the trial court dismissed the damages claim based on slander/false allegations for lack of subject matter jurisdiction. This ruling has not been appealed. The hearing proceeded on Father's contempt petition and his petition to modify custody.

Father testified about the conduct that he felt supported his claims against Mother. In February 2006, Father said, Mother exercised her residential parenting time with Alec on President's Day weekend because the parenting plan allocated the President's Day holiday to her. The

---

[3]On June 18, 2007, the trial court entered an order consistent with its oral rulings.

-3-

President's Day weekend in 2006 fell on Father's regular weekend with Alec. Father submitted into evidence a May 2, 2006 letter from his attorney to Mother's attorney requesting that Mother schedule a make-up weekend, as they had done in the past. Up to the time of trial, Father claimed, Mother had refused to cooperate in scheduling this compensatory weekend. Father admitted, however, that Mother had accommodated his request for a few extra days added on to his summer residential parenting time.

Father also testified that, on six different occasions between April 27 and December 26, 2006, Alec was not available for his court-ordered 8:00 p.m. Tuesday/Thursday telephone call. On these occasions, when Father did not reach Alec by telephone at 8:00 p.m., Father called the local sheriff's office for assistance, to ensure that a report was filed in order to have a written record of the phone calls he missed. In all, Father called the sheriff's office over twenty-four times. On cross-examination, Father conceded that, on each of the six occasions in dispute, he spoke with Alec on the telephone at some point later in the evening; Father insisted that the later contact with Alec occurred only because the sheriff's department forced Mother to call him. On each occasion, someone from the sheriff's department contacted Mother, and after talking to her informed Father that Alec was at some event that prevented him from calling Father at 8:00 p.m. Father attributed Alec's unavailability on these occasions to Mother's efforts to frustrate his telephone communication with his son.

Mother also testified at the hearing. She said she believed that allowing Father extra days in the summer of 2006 made up for the weekend he missed in February 2006. Regarding the missed telephone calls, Mother acknowledged that on six dates Father did not receive a telephone call from Alec at 8:00 p.m. She explained that, on each occasion, Alec was involved in some kind of event, such as a funeral visitation or church event, and that Alec eventually spoke to Father on all of those evenings. Mother characterized the missed telephone calls as simply "mishaps," and noted that, in four years, she had missed only six scheduled telephone calls.

Mother and Father both testified about difficulties that occurred when Alec was exchanged from one parent to the other. In the past, the exchanges had taken place at a local Burger King restaurant, which Father preferred. At the time of trial, the exchanges were taking place at the local police department. Mother complained that Father usually brought a video camera to record the exchange. Father complained about Mother's family members being present for the exchange.

Mother admitted placing a notice in the local newspaper on the occasion of Alec's birthday, which included a photo of Alec with a caption stating that he was "the son of Jay and Kristi Williams," when in fact Alec is Father's son and Jay Williams' stepson. Mother said that she purposefully did not mention Father's name, commenting that Father could have placed a similar notice in the newspaper himself. She testified that she informs Alec's medical providers that Father is Alec's biological father, but indicates that she is the primary residential parent for medical purposes. However, she authorizes the medical providers to give Father information on Alec if requested, and lists Father as Alec's biological father on school information sheets. Both Mother and Father testified that they have tried family counseling; not surprisingly, both said that it had not worked for them. Mother testified that she has expended about $20,000 in attorney's fees in

defending against Father's petitions for contempt, petitions to modify, and other motions and petitions.

At the conclusion of the hearing, the trial court found that Mother was not in willful contempt of court with regard to the missed President's Day weekend in 2006, or the failure to have Alec available by telephone to Father at precisely 8:00 p.m. on six occasions in 2006. In addition, the trial court held that Father had not established a material change in circumstances sufficient to justify changing the parenting arrangement to designate him as the primary residential parent. The trial judge commented, "It seems to me the circumstances have been the same since this divorce . . . ."[4] The trial court observed that Father was to blame for much of the "escalating hostility" between the parties:

> I don't know what has to happen, but something has to happen to stop you from doing this.
> And, Mr. Jackson, to tell you the truth, I find that most of it is you. You know, you call the sheriff's department and leave those phone messages, and every time you do that, they have to fill out a report and circulate it and approve it and file it and keep records of it, and that's really an abuse unless there's somebody who's committed a crime. And this is not a crime.
> . . .
> And I don't know, I'm surprised the sheriff hasn't gotten a restraining order to prevent you from calling over there because you've got to the point every time you call they've got to send out a report. . . .[5]

The trial court denied Mother's request for attorney's fees, instructing Mother's counsel that, to obtain a fee award, she would be required to file a motion for sanctions pursuant to Rule 11 of the Tennessee Rules of Civil Procedure. On January 14, 2008, the trial court entered an order consistent with its oral ruling. The trial court subsequently certified this order as a final appealable order. From this order, Father now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Father argues that the trial court erred in denying his motion for contempt based on Mother's failure to cooperate with Father in compensating for the missed President's Day

---

[4] The trial court also granted Mother's motion for sanctions in the amount of $300 based upon Father's noticing Mother's deposition but failing to secure court reporting services, thereby causing Mother to expend unnecessary attorney's fees.

[5] The trial judge also cautioned Father:

> I know that there are problems. But I tell you what you're about to get into because when that child gets to be close to teenage years, then he's going to have a mind of his own. And if something is unpleasant about having to come see you, he'll just refuse to do it. And you're making it unpleasant.

weekend and for failing to comply with the trial court's order on the six occasions mentioned above regarding telephone communication. He further argues that the trial court erred in finding no material change in circumstances to warrant a change in the parenting plan to designate him as the primary residential parent.

The trial court's findings of fact are reviewed *de novo* on the record, presuming those findings to be correct unless the preponderance of the evidence is otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); Tenn. R. App. P. 13(d). In weighing the preponderance of the evidence, the trial court's findings of fact that are based on witness credibility are given great weight, and they will not be overturned absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2002). Whether a party facing an allegation of civil contempt actually violated the trial court's order is a question of fact, subject to this standard of review. *Hawkins v. O'Brien*, No. M2008-02289-COA-R3-CV, 2009 WL 2058802, at *1 (Tenn. Ct. App. July 15, 2009). When a parent files a petition to modify the parenting plan, the petitioning parent has the burden of showing that a material change in circumstances has occurred which makes the change serve the child's best interest. *Blair v. Badenhope*, 77 S.W.3d 137, 148 (Tenn. 2002). The trial court's conclusions of law are reviewed *de novo*, with no such presumption of correctness. *Kendrick*, 90 S.W.3d at 569-70.

## ANALYSIS

### *Contempt*

We first examine whether the evidence preponderates against the trial court's conclusion that Mother was not in contempt of court by her failure to compensate for Father's missed weekend parenting time in February 2006 and her failure to comply with the trial court's order regarding telephone calls on six occasions. In order to establish that Mother was in contempt of the trial court's orders, the following must be shown:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008) (footnotes omitted).

From our review of the record, we cannot conclude that the evidence preponderates against the trial court's finding that Mother's alleged failure to make up Father's missed President's Day weekend or Mother's failure to make Alec available for six out of several hundred required telephone calls at the appointed time did not amount to willful violation of the court's orders. Mother testified that she was under the impression that the issue of Father's missed weekend had been resolved by her agreement to additional residential parenting time for Father in the summer of 2006. Mother also testified that she had good reason for the six times that Alec missed the telephone call with Father at the designated time, and that Father eventually spoke to Alec on each of these

occasions.  Thus, the telephone calls were delayed, not denied.  The trial court credited Mother's testimony on both of these issues.  On appeal, we are required to give great deference to the trial court's determination on witnesses' credibility.  ***See In re Adoption of A.M.H.***, 215 S.W.3d at 809.  Giving appropriate deference to these credibility determinations, we conclude that the evidence in the record supports the trial court's findings.  Therefore, we affirm the trial court's denial of Father's petition for contempt.

### *Modification of Parenting Plan*

Father next argues that the trial court erred in denying his petition to modify the parenting plan based on the behavior described above and also on Mother's continued conduct in "alienating [Father's] relationship with . . . Alec."  In support of this claim, Father asserts that Mother refuses to consider exchanging Alec at someplace other than the police station, refuses to attend counseling regarding issues pertaining to Alec, fails to inform him of medical or dental services related to Alec, and discourages a close parent/child relationship between him and Alec.  Father points to Mother's placement of the birthday announcement in the newspaper, indicating that her current husband is Alec's father, as evidence of Mother's intent to discourage Father's relationship with Alec.

From our careful review of the record, the evidence does not support Father's claims that circumstances are materially different than they were at the time of the final decree.[6]  Sadly, it appears from the record that the parties' difficulties have been more or less constant since the divorce decree was entered.  Certainly, Mother's misguided "birthday announcement" in the local newspaper, implying that her husband is Alec's father, was insensitive to both Father and Alec.  For his part, Father dismisses any attempts by Mother to cooperate with him as merely trying to "look good" to the trial court, certain that her cooperation was motivated only by his numerous filings against her.  Father's rigidity regarding Alec's telephone calls and his "reporting" Mother to law enforcement undoubtedly creates considerable pressure for young Alec, and indicates that Father values penalizing Mother more than building a nurturing father/son relationship.  Under all of these circumstances, we must affirm the trial court's denial of Father's motion for modification of the parenting plan.

### *Fees on Appeal*

Mother has requested her attorney's fees and costs on appeal pursuant to Tennessee Code Annotated § 27-1-122, alleging that Father's appeal is frivolous.  The decision of whether to award damages for the filing of a frivolous appeal rests in the discretion of this Court.  ***Whalum v. Marshall***, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006) (citing ***Banks v. St. Francis Hosp.***, 697 S.W.2d 340, 343 (Tenn. 1985)).  An appeal is frivolous when it has "no reasonable chance of success," or is "so utterly devoid of merit as to justify the imposition of a penalty."  ***Id.*** (quoting ***Jackson v. Aldridge***, 6 S.W.3d 501, 504 (Tenn. Ct. App. 1999); ***Combustion Eng'g, Inc. v. Kennedy***, 562 S.W.2d 202, 205 (Tenn. 1978)).  In this case, even if Father strongly disagrees with

---

[6]Father appears to indicate that the operable parenting plan order is the one entered on August 24, 2005; however, we note that this order did not alter the parenting arrangement set out in the final decree of divorce.

the trial court's determination as to the parties' credibility, he fails to point to "clear and convincing" evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d at 809. Therefore, we are obliged on appeal to defer to the trial court's finding that Mother's testimony was credible. *Id.* The trial court credited Mother's explanation that the telephone calls with Alec did not occur at 8:00 p.m. because of unavoidable circumstances, and that each telephone call took place later in the evening. Father admits that the telephone calls were merely delayed. The trial court credited Mother's explanation that she accommodated Father's request for additional parenting time during the summer of 2006, in part to compensate for the missed President's Day weekend, and Father admits to receiving the extra parenting time in the summer. Based on this record, we can only conclude that Father's appeal had "no reasonable chance of success." *Whalum*, 224 S.W.3d at 180-81. Under the circumstances in this case, we find that Mother is entitled to her reasonable fees and costs on appeal, and we remand the case to the trial court to determine the amount of the fee award.

The decision of the trial court is affirmed, and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are to be taxed to Appellant James Jeffrey Jackson and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE