**COMBUSTION ENGINEERING, INC.,**
**Appellant-Defendant,**

v.

**James H. KENNEDY, Appellee-Plaintiff.**

Supreme Court of Tennessee.

Feb. 27, 1978.

Paul Campbell, Jr., Chattanooga, for appellant-defendant.

Jeffrey D. Boehm, Chattanooga, for appellee-plaintiff.

OPINION

HARBISON, Justice.

In this workmen's compensation case the trial court awarded benefits to the employee for loss of sight in both eyes, finding a causal connection between the industrial blindness of the employee and an accident which had occurred in the scope and course of his employment. On appeal the principal contention of the employer is that there is no material evidence of such causal connection.

The underlying facts of the case are essentially undisputed. The employee was a welder, approximately forty-eight years of age, and had been employed by Combustion Engineering, Inc. for about twenty-five years at the time of the accident on January 27, 1976. While attempting to extinguish a fire, he struck his head on a metal pipe, sustaining lacerations above his right eyebrow and on the lower right eyelid. The force of impact was such that the employee was thrown suddenly to the floor, and his safety glasses were dislodged. When he got up, he found that blood was flowing from the cuts around his eye, and he was sent to the office of a general surgeon, where the lacerations were sutured. Five days later these sutures were removed. In the interim the employee had reported for work but did not engage in welding; he could not wear his safety helmet because of swelling in the injured area of his face. He did not resume welding until two weeks after the accident. Thereafter he began to suffer from rather severe headaches but was able to continue working with the aid of aspirin.

On Sunday, February 28, 1976 the employee awoke and noticed that vision in his right eye was impaired. On the next morning he notified the employer and was then seen and examined by Dr. Jemison Bowers, an ophthalmologist. Dr. Bowers immediately advised hospitalization of the employee, finding on examination that visual acuity in the left eye was normal but that in the right eye was sharply diminished. Dr. Bowers called a neurosurgeon, Dr. Ralph McGraw, for consultation, and the two doctors saw the employee each day for the next seventeen days while he was in the hospital. Plaintiff lost the vision in his right eye entirely after being hospitalized, and three days later suddenly lost vision in his left eye.

There is general agreement among the medical witnesses that the loss of vision resulted from optic neuritis, an inflammation of the optic nerve. The condition was serious, causing the optic nerve to wither or die, and resulted in severe loss of vision in each eye. The employee can distinguish light from dark and has other limited visual perception. However, there is no question but that he was suffering from total blindness at the date of the trial, within the meaning of the workmen's compensation law.

Numerous tests and examinations were performed upon the employee, both during his hospitalization and thereafter, and there is a wide diversity of expert opinion as to the cause of his optic neuritis. He himself attributed it to the industrial accident which occurred on January 27, 1976. Neither Dr. Bowers nor Dr. McGraw could find any causal nexus between the accident and the subsequent blindness of the employee, nor could other specialists who were called as expert witnesses on behalf of the employer. Several of the witnesses testified that such neuritis is usually the result of multiple sclerosis or some other disease or inflammation of the brain tissues, but there is no evidence that the employee has or has ever had multiple sclerosis, and there is no such diagnosis in the present case.

The employee was examined by another ophthalmologist, Dr. Bruce Dahrling, who gave a professional opinion that the optic neuritis from which the plaintiff was suffering was secondary to and resulted from the accident of January 27, 1976.

■ It is insisted by the employer that Dr. Dahrling's testimony is speculative, and that since he was only an examining physician and not a treating one, his testimony either should not be considered at all or should not be given the weight accorded to

that of the examining and treating physicians.

With respect to the admissibility of Dr. Dahrling's testimony, notice must be taken of the provisions of T.C.A. § 24–718 as follows:

"In the trial of any civil suit, there shall be received in evidence if offered on behalf of any party thereto, opinions as to medical findings as a result of treatment or examination of the party, whether such opinions are based on subjective or objective findings, provided such opinions are those of persons otherwise qualified as medical experts. It is declared to be the intent of this section that medical opinions based on subjective findings are no longer to be excluded from evidence whether the opinion is from the treating expert or an expert called in for purposes of examination and evaluation."

Earlier cases in this state holding to the contrary and relied upon by the employer, are, of course, modified or superseded by these statutory provisions, which have been in force since 1967.

None of the expert witnesses who testified could express anything more than a professional opinion as to the cause of the blindness suffered by the employee, and obviously the trial court was presented with an obscure, complex and difficult medical problem. The greater number of witnesses who testified in the case were of the opinion that there was no causal connection between the accident of January 27, 1976 and the subsequent optic neuritis, but most of them were unable to attribute it to any other known cause. The employee had previously suffered from a viral infection, which he described as influenza, and at least one physician felt that this was the most probable cause of the inflammation of the optic nerve.

The matter, at best, was one for medical and expert opinion, and the trial judge had to choose from conflicting opinions expressed by highly qualified and conscientious expert witnesses. There is no question but that the employee did sustain an industrial accident which resulted in external injuries in the area of his right eye, and that considerable force was involved, to the extent that several sutures were required and the employee was thrown heavily to the floor. The trial judge concluded that the opinion of Dr. Dahrling should be accepted over those of the other expert witnesses and that it contained the most probable explanation in view of the known facts.

We can find no basis for the assertion in the employer's assignments of error that the trial judge failed to weigh the conflicting evidence which was before him. On the contrary he apparently weighed it very carefully. The only basis upon which his decision could be reversed in this Court would be for the Court to conclude that the testimony of Dr. Dahrling was entitled to no weight or consideration whatever and amounted to no material evidence. This we simply are unable to do, because he was a well-qualified witness, acquainted with the history of the case, and competent to express an expert opinion on the critical issue of causation. This materially distinguishes the instant case from *American Enka Corp. v. Sutton,* 216 Tenn. 228, 391 S.W.2d 643 (1965), which is heavily relied upon by the employer. There the testimony found to have no probative value on the issue of causation was that of an optometrist, not an ophthalmologist.

This Court is not permitted under the controlling statute, T.C.A. § 50–1018, to engage in the weighing of testimony or evaluating its preponderance, since judgments of trial courts in workmen's compensation cases are equated to jury verdicts and are reviewed as such. The statute provides that such appeals "shall be heard and determined in accordance with practice governing other appeals in the nature of a writ of error in civil causes." Since the enactment of the workmen's compensation statutes, these provisions have uniformly been construed to mean that the appellate court reviews the record only with respect to questions of law or to determine whether factual conclusions of the trial court are supported by any material and competent evidence.

We have considered the other assignments of error of the employer and do not find them to have sufficient merit to warrant reversal.

 Finding that there is material evidence to support the conclusions of the trial court, we affirm the judgment. We are not able to sustain the motion filed on behalf of the employee, however, that the appeal should be regarded as frivolous, entitling him to expenses and counsel fees under T.C.A. § 27–124. We have already noted that the issues in the case were quite obscure. Viewed objectively, the evidence in favor of the employer was as competent and persuasive as that offered by the employee. Despite the fact that the "material evidence rule" is well settled and axiomatic in workmen's compensation cases, we cannot say that the appeal in this case was so utterly devoid of merit as to justify imposition of a penalty against an employer who has diligently and in good faith sought appellate resolution of the issues.

The judgment of the trial court is affirmed at the cost of appellant, and the cause is remanded to it for entry of such further orders as may from time to time be appropriate.

HENRY, C. J., and COOPER, FONES and BROCK, JJ., concur.