IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Submitted on Briefs June 13, 2011

**IN THE MATTER OF KEELY A. J.**

**Appeal from the Juvenile Court for Sumner County**
**No. 62-49     John Thomas Gwin, by Interchange**

**No. M2010-01703-COA-R3-JV - Filed August 12, 2011**

The appellant contends that the trial court made several serious errors, by *inter alia*, dismissing her claim for child support arrearages, reducing the father's child support obligation, and denying her numerous motions to alter the agreed order after its entry, etc. The problem with these allegations is that they are wholly unfounded because the appellant agreed to settle and/or voluntarily dismiss all of her claims following the third day of trial, prior to the end of the trial. As for her claim that the trial court erred in awarding $10,000 in attorney's fees against her, we find this argument is also frivolous for she was discharged of this specific obligation in bankruptcy. Therefore, we affirm the trial court in all respects. Further, upon the finding this appeal is frivolous, we remand with instructions for the trial court to award the appellee his reasonable and necessary attorney's fees and costs against the appellant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Sandra J., Hendersonville, Tennessee, Pro Se.

Debra L. Dishmon, Lebanon, Tennessee, for the appellee, Mitchell B. L.

**OPINION**

Sandra J. (Mother) and Mitchell B. L. (Father) are the parents of a minor child, Keely A. J., who was born in December of 1999. For several years, Mother has accused Father of very serious acts, including sexual abuse of their child; however, none of the accusations have been found to be credible by a court or the Department of Children's Services. Ten

referrals have been made to the Department of Children's Services. Seven of the referrals were deemed "unfounded" and three were marked "unable to complete."[1]

On numerous occasions, over several years, before at least two different courts, Mother has sought to deprive Father of his parenting time with the child or to restrict it to supervised parenting time. The only occasions on which she was successful resulted from *ex parte* applications; after Father was afforded an opportunity to be heard, his parenting time was restored. Also on more than one occasion Mother has hindered the judicial process. In one instance, in direct contravention of the court's order, she provided prohibited information to the court-appointed psychological evaluator,[2] which resulted in the evaluator refusing to participate and further delayed Father's opportunity to be restored to full parenting privileges without restrictions.

This particular action commenced on July 28, 2009, when Mother filed an Emergency Motion to Suspend Visitation, which was not followed by the filing of a petition, did not include a certificate of service, and was not notarized. Mother filed a subsequent emergency motion to suspend Father's visitation that was signed, but not notarized, and purported to have been served upon Father. The filing of these motions was followed by numerous additional filings in what can best be described as a tortured procedural morass and obstructive maneuvers by Mother, for which the trial court justifiably admonished Mother.

On August 21, 2009, Mother filed an Amended Petition for Contempt and to Modify Father's visitation claiming that Father refused to pay child support and other childcare costs, such as medical expenses. Mother also asserted that a material change of circumstances had occurred, which warranted a modification of Father's parenting time. Father filed an answer and a counter-petition in which he sought a change of the designation of the primary residential parent or in the alternative a modification of parenting time, and a reduction in his child support obligation.[3]

---

[1]This information was included in the testimony of DCS Child Protective Services Case Manager Rashondalyn Nixon, who testified on September 3, 2009. Ms. Nixon also testified that considering the history of the case, her interview with the child during which the child appeared to have been coached by Mother, and a review of the paperwork that Mother provided, which was "very extensive," she and the Department concluded that they had "no reason to . . . restrict [Father's] visitation."

[2]This is addressed in the order entered Dec. 22, 2009.

[3]The Juvenile Court Judge of Sumner County is Judge Barry Brown. Judge Brown briefly presided over this case at the inception but voluntarily recused himself by order entered on August 4, 2009, "[d]ue to the history of this case . . . ." By order entered August 11, 2009, the Chief Justice of the Supreme Court assigned the case to Judge John T. Gwin, who presided over the case thereafter.

The case finally went to trial on March 22, 2010. Mother presented her case for three days; on the fourth day of trial, March 25, 2010, the parties, through their respective counsel and with the agreement of the Guardian ad litem for the child, informed the court that they had settled "all issues" with the exception of attorneys' fees and court costs. Mother was represented by Cynthia Bohn at the time and Ms. Bohn advised the court:

Ms. Bohn: *We have an agreement on all issues except attorney's fees and court costs*, and so we'd like to announce that agreement and ask that it be approved by the Court, and have the Court to say who's going to pay what attorney's fees, and who's going to pay what court costs. Can I announce the agreement?[4]

Judge Gwin: Does the Court understand that the issues of court costs and attorney fees is submitted to the Court based upon the proof that's already in the record, the proof is closed, and following this announcement I'm to decree court costs and attorney fees?

Ms. Bohn: Yes, Sir.

The trial judge then made inquiries of Mother to assure that Mother was fully advised of her rights and the terms of the settlement agreement, and that Mother was fully competent to enter into a binding agreement after which he found that she did understand and she was competent. The Agreed Order was entered on April 22, 2010.

Thereafter, in a letter dated April 16, 2010, the trial court ruled on the issues of attorney's fees and court costs stating that the agreement allowed the court to allocate attorney's fees without further proof but for the respective Affidavits of fees. The court found that the announced settlement agreement between the parties "can only be construed as a victory for the Father," and based upon this and other findings ordered Mother to pay $10,000 towards Father's attorney's fees and litigation expenses. The April 16 letter was subsequently incorporated into the Agreed Order.

---

[4]Trial Record Vol. XIX contains the announcement made to the trial judge by Mother's counsel.

Thereafter, Mother, acting pro se,[5] filed numerous motions, including the following: (1) a Rule 59.04 Motion to Alter and Amend on May 17, 2010; (2) a Motion to Reconsider and Vacate Directed Verdicts on June 21, 2010; and (3) a Motion to Permanently Dismiss Jennifer Porth as the Guardian ad Litem,[6] also filed on June 21, 2010.

By order entered July 6, 2010, the trial court denied Mother's Rule 59.04 Motion to Alter and Amend the Agreed Order of April 22, 2010, her Motion to Reconsider and Vacate Directed Verdicts, and her Motion to Permanently Dismiss Jennifer Porth as the Guardian ad Litem.[7] In the order, the trial court found that "Mother's aforesaid Motions are replete with improper, duplicitous and useless allegations; some of which Counsel for Mother admits were included at the behest of Mother and her non-attorney 'advisor/paralegal'."

Not being deterred by the adverse rulings, Mother filed another wave of motions, including the following: (1) a Tenn. R. Civ. P. 52.02 Motion for Findings of Facts and Laws filed on July 14, 2010, and (2) a Tenn. R. Civ. P. 59.04 and 60.02 and Tenn. R. Juv. P. 22(c) Motion to Alter and Amend the Agreed Order on July 16, 2010.

Changing her focus from the April 22 Agreed Order, but not abandoning that cause, Mother renewed her compulsive attempts to interfere with Father's parenting time; this time interfering with his "agreed upon" parenting time with their minor child for July 2010.[8] On July 20, 2010, Mother filed "Mother's Emergency Ex Parte Petition for Writ of Habeas Corpus and Immediate Return of Daughter to Mother's Custody," which was littered with unsupported allegations against Father and his mother, the paternal grandmother. The trial court denied the petition on the same day upon findings that the petition was unsworn, was not supported by Affidavits, and "Mother's unsworn references to MedLine Plus, Mayo Clinic, and the New York Times, taken together with the extensive history of this case, likewise fail to support an Ex Parte Emergency Order."

---

[5]Ms. Bohn withdrew prior to the filing of the post-agreed order motions, with leave of court, and does not represent Mother on appeal.

[6]Neither of the last two motions are in the record; but they are referenced in the order entered July 6, 2010.

[7]Findings pertinent to these rulings are stated in detail hereinafter.

[8]In the interim, on June 4, 2010, Mother added a new front to her battle with Father by filing a petition in the Chancery Court for Sumner County seeking yet another order of protection against Father. Brief details of this action are referenced on page eleven of this opinion.

The very next day, on July 21, 2010, Mother filed a second "Emergency Ex Parte Petition for Writ of Habeas Corpus and Immediate Return of Daughter to Mother's Custody" and included her own affidavit. She also filed an application for subpoena of their minor child's "attendance and testimony on 07/26/10." Father filed a response on July 22, 2010; the emergency petition was heard on July 26, 2010, at which time Mother struck the pleading.

Following the hearing on Mother's various motions to set aside the settlement agreement announced on March 25 and amend the Agreed Order setting forth that agreement, the trial court entered an order and a separate document entitled "Findings of Fact" on August 2, 2010. We find the following findings of the trial court, stated in paragraph 11 of the "Findings of Fact," especially pertinent:

> *The Court finds that the mother's behavior throughout these proceedings has been obstructive, redundant, and against the best interests of the child. The court finds that, but for the parties' agreement, the Court may well have issued a change of custody in this case. The Court finds that the Mother, over a course of many years, has intentionally interfered with Father's visitation with the minor child. The Court finds that largely because of the Mother's ill advised acts and pleadings, the Father has sustained significant, unnecessary attorney fees.* Examples include, but are not necessarily limited to, Mother's assertions set out in her "Response to Father's Emergency Motion for Custody", dated June 21, 2010, wherein she repeatedly makes reference to facts she claims occurred as far back as 2002; and wherein she claims that this Court has no jurisdiction, after acquiescing to its jurisdiction over the course of multiple hearings (see, Paragraph 14, which begins "Neither Father nor Mother is a juvenile.").

(Emphasis added). In paragraph 33, the trial court also found that Mother:

> [W]as present, alert, and understanding at the time the Agreed Order . . . was announced to the Court [on March 25, 2010]. The Court finds that the Mother had ample opportunity to attempt to withdraw from such agreement, or to complain that the proposed Order [entered April 22, 2010] did not state the parties' agreement. The Court finds that the Order of April 22, 2010, does in fact state the parties' agreement. The Court finds that Mother's subsequent attempts to alter, amend, or set aside such Agreement are the same as her repeated attempts to stop visitation between Father and child.

Based upon the above findings, and many other findings not set forth herein, the trial court denied Mother's motions to amend the judgment and to set aside the settlement agreement incorporated in the order entered April 22, 2010. The trial court also awarded Father "an additional attorney fee for defense of Mother's improper allegations referenced hereinabove, the amount of which will be assessed following the filing of a proper Attorney's Fee Affidavit by counsel for Father, and its review by the Court."

Not surprisingly, Mother's next move was a Motion to Recuse Judge Gwin and Transfer Case to the Sumner County Chancery or Circuit Court, which motion was filed on August 13, 2010. It was denied.

Mother subsequently filed this appeal in which she presents numerous issues for our consideration.

## ANALYSIS

### I.

For her first issue, Mother contends that the trial court abused its discretion by awarding $10,000 in attorney's fees and $1,880 in court costs against her. We find this argument disingenuous and frivolous for several reasons.

In a letter the trial court sent to the parties and their counsel following the announcement of the settlement of "all issues" except attorneys' fees and court costs, which was incorporated into the Agreed Order, the trial court stated in pertinent part:

> In this cause, after numerous hearings and three days of trial, but prior to completion of the proof, the parties announced an agreement in open Court. This agreement, approved and adopted by the Court, addressed all issues but for allocation of attorney fees between the parties.
>
> *Counsel announced that their agreement included allowing the Court to allocate attorney fees without further proof but for the respective Affidavits of fees.*
>
> As announced to the Court, the parties' agreement makes no findings of fact regarding issues of fault or entitlement between the parties. Nonetheless, the Court has before it an extensive history of bitter and, ultimately, unfounded allegations against the Father. The announced agreement can only be construed as a victory for the Father, and in the manifest best interests of the child, all

-6-

achieved as the result of the Father's willingness to see the matter through, in the face of every possible litigation tactic.

The Court finds that the Mother should be obligated to pay the sum of Ten Thousand ($10,000.00) Dollars towards Father's attorney fees and litigation expenses, for which Father shall have a money judgment, and for which execution may issue if necessary. This provision shall be included in the Order which sets out the remainder of the parties' agreement.

Having reviewed the record, and noting with special interest that Father's counsel submitted an affidavit that supported an award of attorney's fees in excess of $36,000, and yet the trial court only awarded Father fees of $10,000, we find no merit to this issue.

We also find it significant that Mother was discharged of this financial obligation under 11 U.S.C. § 727 in bankruptcy court on December 2, 2010. *See In re: Sandra Denise Jackson*, U. S. Bankruptcy Court Case, No.3:10-bk-08920. Thankfully, this important detail was provided in the brief of Father; otherwise, this Court would not have had specific knowledge of this fact. Mother did casually mention – in the very last paragraph of her argument, which was on the seventh page of the argument of this one of many issues – that "[Mother] has since declared bankruptcy and included the $10,000 judgment in the bankruptcy." This unsupported statement, however, was insufficient to confirm that she had been discharged of this obligation.[9]

We, therefore, affirm the award of attorney's fees and court costs, subject, of course, to the discharge of such financial obligations by the bankruptcy court.[10]

## II.

Mother next asserts that the trial court contravened the plain language of Tenn. Code Ann. § 36-5-101 by dismissing Mother's claim of $4,719.20 for child support that she says was past due and owing. We find this assertion without merit because the trial court did not dismiss her claim, she voluntarily withdrew the claim by entering into a settlement and following appropriate inquiries by the trial court to assure that she and her then-counsel,

---

[9]Mother's bankruptcy discharge is not in the record; it is merely referenced in both parties' briefs. Therefore, we rely on the parties' representations that Mother was discharged of this debt in bankruptcy.

[10]Mother presented other frivolous arguments pertaining to the above attorney's fee issue – including an argument pertaining to DCS records from another county that have no bearing on the fee that was awarded here. We find these arguments without merit and unworthy of discussion.

Cynthia Bohn, had discussed the issue and that Mother was aware of the consequences and Mother was in agreement. The transcript from that hearing reads in pertinent part:

> Ms. Bohn:  My client [Mother] is giving up all of her claims to any arrears, non-covered health care expenses, and payment of health insurance, in the event the Court was to find any of that was due. We're starting from scratch right now; everybody's on equal footing.

To further confirm Mother's consent to voluntarily dismissing these claims, her attorney, Ms. Bohn, questioned her on the record by asking Mother, "did you hear the announcement that I made regarding the settlement of this case?" Mother replied, "I did." Then Ms. Bohn asked her client "And are you agreeable to that settlement today?" Mother replied "Yes."

The foregoing notwithstanding, Mother now falsely accuses the trial court of "contravening" the plain language of Tenn. Code Ann. § 36-5-101. For the above reasons, which are obvious and apparent, we find this issue to be without merit and frivolous.

III.

Mother's next unfounded attack on the trial court is that it "erred, abused its discretion, and contravened the plain language of Tenn. Comp. R. & Regs. 1240-2-4-.04(11)(A)-(B) and (1)(B) by [Father]'s child support reduction to the 2001 amount of $118.15 every week without complying with the above rules." We find this issue is also without merit.

When Ms. Bohn made the settlement announcement to the trial court, which included future child support, the court inquired: "Does the Court need to find that that's a deviation upward or downward?" Ms. Bohn, Mother's counsel, answered: "Child support will be - no, we think it's [the] guideline amount." Father' counsel, Ms. Dishmon, informed the trial court: "I think it's right around the same." To which the trial court said: "All right." It is also relevant to note that during the first three days of the trial, which resulted in the settlement under attack here, while Mother was on the witness stand, a Child Support Worksheet was submitted as Exhibit 18 and according to Mother's testimony and Ms. Bohn's statements to the trial court, Father's child support obligation, if set according to the guidelines, would have decreased by $24 a month, from $538 per month to $514 per month. Accordingly, we find nothing in this record to support a finding, and Mother has failed to provide any credible

evidence to support a finding, that the trial court abused its discretion or otherwise erred by approving the agreed upon child support obligation.

IV.

The next issue for our review is whether the trial court "erred, abused its discretion, and contravened the plain language of Tenn. R. Civ. P. 59.04 and 60.04 by summarily dismissing in full, with no proof taken," the Rule 59.04 and 60.02 motions Mother filed after July 6, 2010, to alter or amend the Agreed Order.

In Father's brief in response to this issue he states: "An applicable response to this issue is especially complicated due to [Mother's] failure to provide citations to the record as required by Tenn. R. App. P. 27(g), [Mother's] misrepresentation of facts, and the convoluted nature of [Mother's] argument regarding this issue." We could not agree more.

In the August 2, 2010 order, which resulted from the July 30 hearing, the trial court denied Mother's two motions to amend the Agreed Order for several stated reasons. The primary reason was that her post July 6 motions were the second set of Rule 59 and Rule 60 motions to alter or amend the same Agreed Order, that the first set of Rule 59 and 60 motions had been denied, and that the second set of motions were little more than a repeat of the first. Finding no reason to rule differently than before, the trial court denied the post July 6 motions to alter or amend the Agreed Order. Our review of a trial court's decisions concerning Rule 59 and 60 motions is the very deferential abuse of discretion standard. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Rogers v. Estate of Russell*, 50 S.W.3d 441, 444 (Tenn. Ct. App. 2001). Mother has failed to identify a bona fide reason upon which to find an abuse of discretion and we find none.

V.

Mother's next frivolous assertion is that the trial court "erred, abused its discretion, and contravened the plain language of Tenn. R. Juv. P. 22(C) by altering the parenting time in paragraph 11 of the April 22, 2010 Agreed Order in a manner not provided in Tenn. R. Juv. P. 221 and Prior to [Father]'s move to New York State." Once again, and for similar reasons, we find this issue wholly without merit.

The genesis of what became a decade of vindictive litigation and false accusations and referrals to the Department of Children's Services was the filing of a paternity action years earlier in which Father's paternity was established and parenting time was first established. Skipping over several years of intense battle in courtrooms and via the Department of Children's Services to the focal point of this particular issue, pursuant to the Agreed Order

entered April 22, 2010, the parties provided for Father's intended move to New York by awarding him parenting time for the entire month of July each year, beginning on June 30 and ending on July 31, starting with the current year 2010. The error and abuse of discretion Mother alleges here pertains to the trial court subsequently granting Father one additional day of parenting time, June 29, 2010, so that the child could travel on the plane with Father, under his direct supervision, instead of flying alone the following day. Mother took great exception to this and filed another motion, this one on July 14, 2010, being "Mother's Tenn. R. Civ. P. 52.02 Motion for Findings of Facts and Laws," wherein she requested specific findings that led the trial court to alter paragraph 11 of the April 22, 2010 Agreed Order by awarding Father one extra day for the year 2010 only. The trial court clearly and concisely responded to the motion stating:

> The Court finds that *Mother's last minute taking of a Petition for Order of Protection[11]* on behalf of herself and of the minor child, *was for the specific purpose of attempting to interfere with the visitation that the Mother herself agreed the Father could have*. The Court finds that as the result of the attempted Order of Protection, the Father yet again missed visitation time with the child. *The Court modified the start date and time of the Father's heretofore agreed upon visitation, to facilitate the child's ability to travel under the Father's direct supervision*. (emphasis added)

Following the lengthy hearing on June 24, 2010, in which a modification of parenting time was at issue, the parties, through their respective counsel, informed the trial court that in addition to establishing parenting time for the immediate present, the parties were also anticipating Father's planned move to New York. Significantly, Mother agreed to that plan. The court's subsequent modification of that plan was minuscule, adding one day to Father's parenting time for the benefit of their child, in order for the child to fly with Father instead of the child flying to New York alone.[12] For Mother to challenge this modification speaks volumes of her failure to focus on the best interests of the child choosing instead to further her compulsive efforts to frustrate Father's parenting time with the child. Finding this issue wholly frivolous, we will waste no more time discussing it.

---

[11]This particular last minute Order of Protection Mother requested was filed after the entry of the Agreed Order and prior to the June 24 order that awarded Father one extra day of parenting time.

[12]Notably, Tenn. R. Juv. P. 22(C) provides that the trial court "by order of the court upon notification to the parties and a hearing" may modify an agreed order.

### Other Related Civil Actions and Appeals by Mother

Now that we have decided all issues raised by Mother, we believe it appropriate to address Mother's unsubstantiated allegations in two other civil actions that have reached this court, both of which pertain to the parties and their child Keely, *Sandi D. Jackson et al. v. CVS Corp.*, No. M2009-02220-COA-R3-CV, 2010 WL 3385184 (Tenn. Ct. App. Aug. 26, 2010), and *Sandi D. Jackson v. Mitchell B. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL _____, (Tenn. Ct. App. August __, 2011). We believe they are relevant, to a degree, because they provide context to the issue of Mother's credibility, or lack thereof, and to the next issue, whether this appeal is frivolous.

*Jackson v. CVS* arose after the child was removed from the custody of Mother on March 10, 2004, by the Sumner County Department of Children's Services. *See Jackson v. CVS*, 2010 WL 3385184, at *1. It was preceded by a dependency and neglect action in which Mother was alleged to have abused drugs, including prescription medication, some of which was allegedly prescribed by Mother who was a nurse practitioner at the time. *Id.* On August 6, 2004, the juvenile court ruled against Mother and declared the child, Keely, dependent and neglected and Mother did not regain custody of Keely for a year, not until March 7, 2005. *Id.*

*Jackson v. CVS*, however, did not directly involve Father. Instead, the principal defendant was the CVS Pharmacy that Mother used to fill prescriptions for herself and Keely. In the CVS action, Mother alleged that she and the child were harmed by CVS's disclosure of "their private health information" during the course of the 2004-05 proceedings. *Id.* The disclosures were in the form of one prescription pad copy of twenty-three listed prescriptions for the child and ninety-six listed prescriptions for Mother. *Id.* In the complaint, Mother alleged for herself and Keely that the disclosure of the personal health information was "used tortiously against Plaintiffs to interfere with mother-child relationship, prevent reunification via slander, lies, defamation, professional persecution, and malicious prosecution, and to inflict emotional duress and psychological pain and suffering upon the Plaintiffs," for which Mother sought damages of $22,150,000. *Id.*

What is surprising, indeed most perplexing, about Mother's allegations against CVS is that Mother had previously disclosed, indeed personally delivered, the same "private health information" to DCS and to a news reporter. Moreover, the disclosure of health information at issue had been expressly authorized by the trial judge presiding over the underlying dependency and neglect action pursuant to an order that followed a formal hearing.[13] *Id.* at

---

[13]Sue Dunning was appointed the guardian ad litem for Keely on March 16, 2004, and the order
(continued...)

*5. Following discovery and other proceedings, the trial court dismissed the action against CVS and this court affirmed the dismissal. *Id.* at *8.

In another appeal which directly involves Father, *Sandi D. Jackson v. Mitchell B. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL _____, (Tenn. Ct. App. August __, 2011), Mother petitioned the Chancery Court for Sumner County on June 4, 2010,[14] for yet another order of protection against Father. She filed the petition on behalf of herself and the parties' child, Keely. In her petition she alleged that, on May 30, 2010, Father sent threatening "text messages" and caused Mother and their child to fear for their safety. This occurred after Father allegedly failed to pick Keely up on May 29, 2010, for his weekend parenting time. As often has occurred when Mother sought *ex parte* relief against Father, Mother prevailed at the *ex parte* phase only to have her petition dismissed when Father was afforded an opportunity to be heard at trial.[15] This court's opinion in that matter, which pertains to the merits of her case and, in part, to jurisdictional and interchange issues, is being filed concurrent with this opinion.

### FRIVOLOUS APPEAL

For his only issue, Father seeks to recover damages pursuant to Tenn. Code Ann. § 27-1-122 for expenses he incurred defending this appeal. He contends the appeal pursued by the appellant is devoid of merit and thus frivolous.

The mere fact a party is successful in an appeal does not entitled that party to recover

---

[13](...continued)
appointing Ms. Dunning also provided that "for the purpose of preparing for the adjudication of matters pending before the Court, the guardian ad litem shall have access to all documents and records pertaining to the child including, but not limited to, all records of the Department of Children's Services and any other medical, educational and/or psychological records." *Jackson v. CVS Corp.*, 2010 WL 3385184, at *1.

[14]The timing of the petition in Chancery Court is interesting. It was filed just after the adverse ruling in the Juvenile Court of Sumner County and while Mother's Rule 59.04 Motion to Alter and Amend on May 17, 2010, was pending in the Juvenile Court. Thereafter, Mother continued her assault on the juvenile court by filing another wave of motions, including Mother's Motion to Reconsider and Vacate Directed Verdicts on June 21, 2010, her Motion to Permanently Dismiss Jennifer Porth as the Guardian ad Litem, filed on June 21, 2010, and a motion for Judge Gwin to recuse himself.

[15]In an order entered on June 18, 2010, the Chancellor noted that there were matters pending before Judge Gwin, sitting by interchange in the Sumner County Juvenile Court, and that a trial was set for June 24, 2010. The Chancellor also stated that he had inquired with Judge Gwin who had "agreed to hear this matter by interchange with the Chancery Court of Sumner County, Tennessee at Gallatin." The Chancellor then ordered that the case be heard by Judge Gwin by interchange.

damages under Tenn. Code Ann. § 27-1-122; however, a successful litigant should not have to bear the expense of a "groundless" appeal. *Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977). To discourage such appeals and to avoid burdening this Court with meritless appeals, the General Assembly enacted the so-called frivolous appeals statute, Tenn. Code Ann. § 27-1-122. *Id.*

"A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (quoting *Combustion Engineering, Inc. v. Kennedy*, 562 S.W.2d 202 (Tenn. 1978); citing *Black's Law Dictionary*, 5th Edition). The remedy for one aggrieved by a frivolous appeal is set forth at Tenn. Code Ann. § 27-1-122, which provides:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on judgment, and expenses incurred by the appellee as a result of the appeal.

As is more than apparent from reading this opinion, we can easily conclude that this appeal is so lacking in justiciable issues that it constitutes a frivolous appeal within the meaning of the statute. Accordingly, we remand the issue to the trial court to determine the proper amount of damages to which Father is entitled pursuant to Tenn. Code Ann. § 27-1-122.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings as stated above. Costs of appeal are assessed against the appellant, Sandra J., for which execution may issue.

_____
FRANK G. CLEMENT, JR., JUDGE