# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 17, 2016 Session

## ELIZABETH MESMER COCKE v. THOMAS LAWRENCE HUNT COCKE

### Direct Appeal from the Circuit Court for Davidson County
No. 11D-1732     Philip E. Smith, Judge

---

### No. M2015-01440-COA-R3-CV – Filed April 19, 2016

---

This is an appeal of an order granting a reduction in child support. Mother appeals the trial court's finding that she is voluntarily underemployed and alleges that the trial court improperly modified the parties' parenting plan *sua sponte*. We conclude that the trial court did not modify the parenting plan in this case and affirm the order of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

John Shackelford Colley, III, Columbia, Tennessee, for the appellant, Elizabeth Mesmer Cocke.

Grant Charles Glassford, Brentwood, Tennessee, for the appellee, Thomas Lawrence Hunt Cooke.

### OPINION

### I. Background & Procedure

Thomas Lawrence Hunt Cocke ("Father") and Elizabeth Mesmer Cocke ("Mother") married on October 16, 1993. The parties were divorced by final decree on April 25, 2012. At the time of the divorce, the parties had two minor children, ages 17 ("Son") and 15 ("Daughter"). The parties' parenting plan designated Mother primary residential parent but evenly split the number of days awarded to each parent. In addition to alimony, Father was ordered to pay Wife $1,270 per month in child support. Mother eventually re-married and her alimony was terminated. The parties' son was

emancipated on his graduation from high school in May 2014.

On June 19, 2014, Mother filed a petition to modify the parenting plan and child support,[1] requesting that the parenting plan be modified to reflect that the parties would share in their children's educational and extracurricular activities on a pro rata basis according to their respective incomes and that Father's child support be increased. In response, Father filed a motion to modify child support, arguing that the emancipation of the parties' son entitled Father to a reduction of child support. The trial court heard Father's motion on May 28 and 29, 2015 and considered testimony from both Father and Mother.

Father testified that the parties' son turned eighteen in June 2013 and graduated from high school in May 2014. Mother agreed that Son's emancipation resulted in Father no longer having to provide child support for that child. However, Mother stated that the original child support amount was not evenly split between each child, nor did the marital dissolution agreement specify how much child support was allocated for each child. According to Mother, Daughter's educational and extracurricular expenses are so great that Mother's portion of those expenses alone consumes the entire child support payment Mother receives each month.

The parties evenly split the cost of Daughter's private school tuition, which most recently was $18,000 per year. Daughter also participates in club soccer, which costs about $5,500 per year. According to Mother, she pays about 90% of the soccer expenses although the parties agreed to split the cost evenly. However, Father noted that although Mother is designated the primary residential parent, Daughter actually spends the vast majority of days with Father because his home is closer to Daughter's school. After Mother re-married, she moved out of Davidson County to Maury County, a significant distance from Daughter's school. Father testified that from January 1, 2015 through May 2015, Daughter spent only 25 to 30 nights with Mother. Mother disputed Father's testimony but could not provide an estimation of the number of nights Daughter stayed with her. However, Mother admitted that it was logistically easier for Daughter to stay with Father and that she let Daughter stay with Father "more than [she'd] like."

The parties also testified about their respective incomes. Father works for an advertising firm and testified that he was on track to make $148,992 in 2015. In 2014, Father made $137,000. Mother has a journalism degree but currently works as a private swim instructor fifteen hours per week. Prior to her divorce, Mother taught swim lessons part-time at a community center and earned $55 per hour. However, she noted that because she left the community center and now only has access to an outdoor pool, her

---

[1] On May 29, 2015, Mother filed an objection to hearing her petition to modify because she was not prepared to proceed. Mother then non-suited her petition on July 30, 2015.

work is seasonal. In discussing why she could only work fifteen to twenty hours per week maximum, she stated that the work was "pretty exhausting" and that the amount she worked was "physically about all [she] could do." When asked why she could not go out and work a full time job, Mother admitted that working part-time was a choice she made and stated,

> [y]ou know, honestly, it's my passion to teach swimming and I love it, and I've done it for 15 years. I've been out of the job market for so long. I did work in real estate 20 years ago, but I don't have the skill-set to even go get a job that requires a computer or something like that.

Mother charges $80 per hour for private swim lessons, but she could not produce any financial records for the current year at trial. She estimated that she had made around $5,000 for the year at the time of trial. In 2012 and 2013, Mother reported $24,790 and $26,371 in wages, salaries, and tips, respectively. Additionally, Mother testified concerning a number of vacations she had taken with her husband in 2015 but stated that most of those were weekend trips and did not interfere with her ability to work.

The trial court made findings of fact and issued an order in this case on June 30, 2015. The court found that Father was a "very truthful witness" and observed that Mother's testimony "was not impressive. She remembered the things that benefited her, but could not remember things that hurt her." The trial court seemed particularly troubled by Mother's "ability to recall $5,500 in soccer expenses when she could not remember most anything else regarding finances." The court ultimately stated that it "[did] not believe much of what [Mother] said."

With respect to income for the purpose of calculating child support, the trial court found that Father earned $12,416.66 per month. On the other hand, the court found that Mother was willfully and voluntarily underemployed, that she has a degree in journalism, and that she made a choice to only work fifteen hours per week. The trial court found that Mother has "the ability to earn $825 per week ($55 per hour working 15 hours per week)" or $3,575 per month. Additionally, the court found that Mother's husband provides her with $1,000 per month, which the court viewed as a gift and income under the child support guidelines.[2] Accordingly, the court found that Mother's income was $4,575 per month.

Finally, the court also found that the child support worksheet "should reflect that [Daughter] spends 120 days with Mother and 245 days with Father" because "Father exercises substantially more time with the [Daughter]." Based on the parties' respective

---

[2]Tenn. Comp. R. & Regs. 1240-2-4-.04(3).

incomes and the number of days Daughter actually spent with each parent, the trial court ordered that Mother pay Father $113 per month in child support. Additionally, the court awarded Father retroactive relief to August 1, 2014, in the amount of $11,290. The court then denied Father's request for attorney's fees due to Father's earning ability.

## II. Issues

Mother presents the following issues for review on appeal:

I.      Whether the trial court [erred by modifying] the Parenting Plan *sua sponte*.

II.     Whether the modification of the Parenting Plan without engaging in a "best interests" analysis is reversible error.

III.    Whether Mother was intentionally underemployed.

Father presents one additional issues for review:

IV.     Whether [Mother] should be ordered to pay for [Husband's] attorney's fees for pursuing a frivolous appeal.

## III. Standard of Review

In nonjury cases, this Court's review is *de novo* upon the record of the proceedings in the trial court, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel,* 919 S.W.2d 26, 35 (Tenn. 1996).

## IV. Analysis

Wife first argues that the trial court erred by modifying the parenting plan *sua sponte*. Our review of the record, including transcripts from the hearing, indicates that the court did not modify the parenting plan, but merely recalculated the amount of child support based on the number of actual days Daughter spent with Husband and Wife, respectively.[3]    During the hearing, the court stated, "I'm not going to modify the

---

[3]The child support guidelines state that the child support worksheet should reflect "the number of days each child spends with each parent," which we have stated to be the "actual number or days spent in the care of each parent, as opposed to the number or days established under the permanent parenting plan."

4

parenting plan. I don't have anything before me to do that" in response to a suggestion made by Mother's counsel. Then, the trial court's order specifically stated that it found "that the *worksheet* should reflect that the minor child spends 120 days with Mother and 245 days with Father…." (Emphasis added.) In fact, the court's order even refers to Mother as "the primary residential parent." Nothing in the order changes the designation of primary residential parent or the number of days awarded to either parent. Because the parenting plan was not modified, Mother's second issue is pretermitted.

Mother next argues that the trial court erred in finding that Mother is intentionally underemployed. We disagree. "'Determining whether a person is willfully and voluntarily underemployed is a fact-driven inquiry requiring a careful consideration of all the attendant circumstances.'" *Von Tagen v. Von Tagen*, No. M2009-00850-COA-R3-CV, 2010 WL 891893, at *8 (Tenn. Ct. App. Mar. 12, 2010), *perm. app. denied* (Tenn. Aug. 25, 2010)(*quoting Lane v. Lane*, No. M2008-02802-COA-R3-CV, 2009 WL 3925461, at *6 (Tenn. Ct. App. Nov. 17, 2009)). Therefore, an appellate court "accords substantial deference to the trial court's decision, especially when it is premised on the trial judge's singular ability to ascertain the credibility of the witnesses." *Von Tagen*, 2010 WL 891893 at *8 (citing *Walker v. Walker*, No. M2002-02786-COA-R3-CV, 2005 WL 229847, at *2 (Tenn. Ct. App. Jan. 28, 2005)).

In order to determine whether a spouse is voluntarily underemployed, we consider his or her past and present employment and the reasons for taking a lower paying job. *Byrd. v. Byrd*, 184 S.W.3d 686, 691 (Tenn. Ct. App. 2005) (citation omitted). If the reason for taking the lower paying job is reasonable and made in good faith, the court will not find the person to be willfully and voluntarily underemployed. *Id.* Here, the trial court found that Mother made a choice to only work part-time, when she admitted that she was able to work full-time. The record is clear that Mother chooses part-time work because it is her "passion," even when she could work full-time in another profession. Simply, the evidence in the record does not preponderate against the trial court's finding that Mother is voluntarily underemployed.

Lastly, Father argues that Mother should be ordered to pay his attorney's fees for pursuing a frivolous appeal pursuant to Tennessee Code Annotated section 27-1-122. Specifically, Father alleges that Mother's appeal concerns "phantom issues." While we agree that two of the issues raised by Mother in this case are indeed mere apparitions with no factual basis, we nevertheless decline to award Father his attorney fees. "A frivolous appeal is one that is 'devoid of merit,' or one in which there is little prospect that it can ever succeed." *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d, 382, 385 (Tenn.

---

*Ghorashi-Bajestani v. Bajestani*, No. E2013-00161-COA-R3-CV, 2013 WL 5406859, at *9 (Tenn. Ct. App. Sept. 24, 2013), *perm. app. denied* (Tenn. Mar. 5, 2014); Tenn. Comp. R. & Regs. 1240-02-04-.08(2)(a)(1).

Ct. App. 1995) (*quoting Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202 (Tenn. 1978)) (internal citations omitted). With respect to the trial court's finding that Mother is voluntarily underemployed, Mother's appeal is not so "devoid of merit" and "lacking in justiciable issues that it constitutes a frivolous appeal within the meaning of the statute." *See Barnett v. Tennessee Orthopaedic Alliance*, 391 S.W.3d, 74, 85 (Tenn. Ct. App. 2012). Therefore, we decline to award Father his attorney's fees in this case.

## V. Conclusion

For these reasons, we affirm the order of the trial court. Costs of this appeal are taxed to the appellant, Elizabeth Mesmer Cocke, and her surety, for which execution may issue, if necessary.

_____
BRANDON O. GIBSON, JUDGE