IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 14, 2025 Session

**MARK ELLIOTT v. DAVE WRIGHT ET AL.**

**Appeal from the Circuit Court for Knox County**
**No. C-22-228822      William T. Ailor, Judge**

_____

**No. E2024-01003-COA-R3-CV**
_____

The plaintiff in this landlord-tenant dispute sought a temporary injunction in the general sessions court, asking the court to force the defendant landlords to repair an air conditioning unit. The general sessions court granted a temporary injunction and later held a final hearing, after which it awarded the plaintiff $24,793.63 in damages. The defendants appealed to the circuit court which, following a bench trial, dismissed the plaintiff's case. The circuit court, inter alia, concluded that the plaintiff offered no proof of his damages. The plaintiff timely appealed the circuit court's judgment to this Court. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Emily Cala, Knoxville, Tennessee, for the appellant, Mark Elliott.

Ben H. Houston II, Knoxville, Tennessee, for the appellees, Dave Wright and Patricia Wright.[1]

**OPINION**

**BACKGROUND**

This case arises from a landlord-tenant dispute over a property in Corryton, Tennessee. Mark Elliott ("Plaintiff") rented the property at issue for over nine years and lived there with his wife and two children. Although the parties have used the property as

_____

[1] A Notice of Suggestion of Death was filed in this Court on January 22, 2025, stating that Appellee Patricia Wright passed away on December 24, 2024.

a residential space, it is a commercial property with two rooms and no windows that open. Essentially, it is a warehouse. Dave Wright and Patricia Wright ("Defendants") own the property.

The building did not have an HVAC system when Defendants purchased it. Defendants installed the HVAC and became aware that it had issues two to three years before Plaintiff initiated this action. According to Mr. Wright, the HVAC was in "a very poor state of repair for a couple of three years" and "had been worked on three times" prior to 2022. According to Plaintiff, the HVAC problems became serious in April of 2022. Around that time, the warehouse became extremely hot, with the temperature frequently rising above ninety degrees Fahrenheit. Because the windows in the property do not open, Plaintiff and his family had to leave the doors open to cool the interior.

Plaintiff filed a civil warrant against Defendants on July 1, 2022, in the General Sessions Court for Knox County (the "general sessions court"), requesting "ex parte injunctive relief to restore essential services." The same day, the general sessions court entered an ex parte order requiring Defendants to make a "good faith effort" to repair the HVAC unit as soon as possible and to "provide Plaintiff with no less than one standing air conditioning unit per room or, in the alternative if the unit is a studio or one large room, three air conditioning units, by July 3, 2022 if the air conditioner cannot be fixed on July 1, 2022[.]" Defendants provided Plaintiff with two standalone units, purchased from Target, on July 7, 2022. Plaintiff testified that the units helped a little but that the temperature inside the property remained as high as ninety degrees in the afternoons. Plaintiff and his family ultimately vacated the property in September of 2022.

The general sessions court held a hearing on September 20, 2022, after which it entered a judgment in favor of Plaintiff for $24,793.63. Defendants timely appealed the general sessions court's decision to the Circuit Court for Knox County (the "circuit court" or the "trial court"), which held a bench trial on October 26, 2023.

Plaintiff and Mr. Wright testified at trial. Plaintiff testified that during his tenancy, he always called or texted Defendants when an issue with the property arose. Plaintiff stated that the parties also spoke in person once a month when Mrs. Wright collected Plaintiff's rent. According to Plaintiff, he first informed Defendants about the property's high temperatures on or around April 14, 2022. Plaintiff again spoke to Mrs. Wright on May 1, 2022, when she collected Plaintiff's rent in person. Plaintiff testified that he never communicated with Defendants by mail. Prior to Plaintiff filing the warrant in general sessions court, Mr. Wright offered to remove one of the doors to the property, fill the hole with plywood, and then place a wall unit in the plywood supported by a piece of wood. Plaintiff testified that he was uncomfortable with that solution because the piece of plywood would be unsecured and unlocked. Consequently, Defendants did not do anything to alleviate the situation until after being ordered by the general sessions court to provide the small portable units in July 2022.

At the close of proof, Defendants moved to dismiss Plaintiff's case, arguing that Plaintiff offered no proof of damages. The trial court granted Defendants' motion, ruling, in relevant part, as follows:

> With regard to provision (3)(c) of 66-28-502, it is clear and unambiguous that the rights of this section do not rise until the tenant has given written notice to the landlord and has shown that the condition was not caused by the deliberate or negligent act or omission of the tenant. There has been no proof in the record that the [P]laintiff gave written notice to the landlord.

The trial court entered its written order January 10, 2024. In the written order, the circuit court reasoned that Plaintiff showed no proof that he gave Defendants written notice of the HVAC issues, that no evidence established that the warehouse was uninhabitable, and that Plaintiff offered no proof as to his damages. The circuit court also noted that Plaintiff declined Defendants' offer to mount a wall unit in a plywood door. Plaintiff filed a timely motion to alter or amend, which the circuit court denied in an order entered on June 17, 2024. Plaintiff then timely appealed to this Court.

### ISSUES

Plaintiff raises several issues on appeal, which are taken verbatim from his appellate brief:

1. Under Tenn. Code Ann. § 27-5-108 and Tennessee case law, did the Knox County Circuit Court err when it held that the Knox County General Sessions Court's order was not enforceable on appeal to Circuit Court?

2. Under Tenn. Code Ann. § 16-15-401, did the Knox County Circuit Court err when it effectively removed the Knox County General Sessions Court's injunctive powers and undermined the legislative intent of injunctive relief?

3. Under the Uniform Residential Landlord and Tenant Act, did Defendants act in contempt of the Knox County General Sessions Court's order when they furnished only two standing air conditioning units to Plaintiff after July 2, 2022?

4. Under Tenn. Code Ann. § 66-28-304, did Plaintiff still need to seek injunctive relief for uninhabitable conditions when Defendants proposed a "repair" involving removing his front door?

5. Under Tenn. Code Ann. § 66-28-502, the Uniform Residential Landlord and Tenant Act, and other principles of equity, did the Circuit Court err when it ruled that Plaintiff did not provide Defendants written notice of the needed repair?

6. Under the Uniform Residential Landlord and Tenant Act, did the Circuit Court rule properly when it relied on inconsistent findings of fact and law to dismiss the case?

In their posture as appellees, Defendants request their appellate attorney's fees.

## DISCUSSION

This case was tried by the trial court sitting without a jury. We review the trial court's factual findings de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *Cross v. City of Memphis*, 20 S.W.3d 642, 644 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d). The trial court's legal conclusions, however, are reviewed de novo without a presumption of correctness, and we must "reach [our] own independent conclusions regarding these issues." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001).

Plaintiff's first two issues raise the same fundamental question, which is the extent to which the circuit court has the authority to review the general sessions court's judgment. Plaintiff first asserts that the circuit court could not entirely "disregard[] the legal effect of the [g]eneral [s]essions [c]ourt's July 2022 order." Plaintiff argues that because Defendants took longer to install the portable air units than required by the general sessions court's order, the circuit court should have held Defendants in contempt. In that vein, Plaintiff maintains that the circuit court's actions "undermine[] the legislative intent of injunctive relief." According to Plaintiff, "by holding that an injunction and a contempt finding is nullified upon filing an appeal, the [c]ircuit [c]ourt has effectively removed all injunctive powers granted to general sessions courts by the Tennessee legislature."

The relationship between general sessions courts and circuit courts is well established. "Any party may appeal from a decision of the general sessions court to the circuit court of the county within a period of ten (10) days on complying with this chapter." Tenn. Code Ann. § 27-5-108(a)(1). Appeals from general sessions courts are heard de novo by the circuit courts. *Id.* § 27-5-108(c). As explained by the Court of Criminal Appeals,

> [a] de novo review entitles the parties "to a reexamination of the whole matter of law and fact" with the circuit court "not concerned with what took place in the lower court; the matter is tried as if no other hearing had occurred." *State v. Cunningham*, 972 S.W.2d 16, 18 (Tenn. Crim. App. 1998). A de novo review requires the circuit court "to make an independent judgment following the presentation of proof." *Id.* Merely reviewing the general session court's judgment "for abuse of discretion does not satisfy the requirements of the statute." *Id.* **In essence, a perfected appeal from the general sessions court to the circuit court abrogates the judgment of the general sessions court.** *Roberts v. State*, 212 Tenn. 25, 367 S.W.2d 480, 481

(Tenn. 1963). Accordingly, the circuit court must enter a new judgment after making an independent review of the law and facts of the case.

*State v. Kirk*, 392 S.W.3d 622, 624 (Tenn. Crim. App. 2011) (emphasis added).

Plaintiff urges that the de novo review standard leaves litigants in general sessions courts with no meaningful relief when they are successful in the lower court, but the other party then appeals to circuit court. Nonetheless, this is how an appeal from general sessions court functions; the circuit court is "not concerned with what took place in the lower court[,]" and "a perfected appeal from the general sessions court to the circuit court abrogates the judgment of the general sessions court." *Kirk*, 392 S.W.3d at 624 (citing *Cunningham*, 972 S.W.2d at 18; *Roberts*, 367 S.W.2d at 481).

This procedure does not render a general sessions judgment useless as Plaintiff posits. If no appeal is filed and the general sessions judgment becomes a final order, a party may be held in contempt and/or the judgment collected. Moreover, when a general sessions judgment is appealed, the opposing party also has the opportunity to present its case anew in the circuit court, as Plaintiff did in this case.[2] In any event, Plaintiff's argument is essentially a policy argument regarding the role of Tennessee courts and the utility of injunctive relief in general sessions courts. This argument is beyond this Court's reach and is better directed to our Supreme Court or our legislature. Here, the circuit court acted correctly in reviewing the case de novo and rendering a fresh, independent judgment.

This conclusion also dovetails with Plaintiff's third issue, which is whether the circuit court should have held Defendants in contempt of the general sessions court's order. In his appellate brief, Plaintiff asserts that the circuit court should have awarded Plaintiff damages "after Defendants provided him two standing air conditioning units because Defendants' actions do not comply with the General Sessions Court's order." Again, the circuit court's role was to review this case anew and render a fresh, independent judgment irrespective of the general sessions court's ruling, and that is what the circuit court did. Considering the circuit court's duty to conduct a de novo hearing, it would make little sense for the court to hold Defendants in contempt. Plaintiff's third issue is without merit.

Plaintiff's next three issues deal with the Tennessee Uniform Residential Landlord and Tenant Act ("URLTA"), specifically, sections 66-28-304 and 66-28-502. These issues require us to construe URLTA. "[W]hen an issue on appeal requires statutory interpretation, we review the trial court's decision de novo with no presumption of correctness." *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas and Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018) (citing *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 58 (Tenn. Ct. App. 2015)). The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. *Id.* We begin by "reading the words

---

[2] In this case, Plaintiff had over a year to prepare for the trial in circuit court.

of the statutes using their plain and ordinary meaning in the context in which the words appear." *Id.* When the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning. *Id.*

In relevant part, section 66-28-304 provides that a "landlord shall . . . [c]omply with requirements of applicable building and housing codes materially affecting health and safety[,] and [m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition[.]" Tenn. Code Ann. § 66-28-304(a)(1)-(2). Further, section 66-28-502 provides:

> (a)(1) If the landlord deliberately or negligently fails to supply essential services, the tenant shall give written notice to the landlord specifying the breach and may do one (1) of the following:
>
> (A) Procure essential services during the period of the landlord's noncompliance and deduct their actual and reasonable costs from the rent;
>
> (B) Recover damages based upon the diminution in the fair rental value of the dwelling unit, provided tenant continues to occupy premises; or
>
> (C) Procure reasonable substitute housing during the period of the landlord's noncompliance, in which case the tenant is excused from paying rent for the period of the landlord's noncompliance.
>
> (2) In addition to the remedy provided in subdivision (a)(1)(C), the tenant may recover the actual and reasonable value of the substitute housing and in any case under this subsection (a), reasonable attorney's fees.
>
> (3) "Essential services" means utility services, including gas, heat, electricity, and any other obligations imposed upon the landlord which materially affect the health and safety of the tenant.
>
> (b) A tenant who proceeds under this section may not proceed under § 66-28-501 or § 66-28-503 as to that breach.
>
> (c) The rights under this section do not arise until the tenant has given written notice to the landlord and has shown that the condition was not caused by the deliberate or negligent act or omission of the tenant, a member of the tenant's family, or other person on the premises with the tenant's consent.

Together, these sections create a habitability standard that can give rise to a landlord's liability, as well as a remedy for instances in which a landlord fails to maintain essential services.

Here, Plaintiff first argues that Defendants' offered repair to the residence, the door-mounted air conditioning unit, violated various local building codes and URLTA's habitability requirement, and was therefore negligent. Plaintiff claims that "[t]he repair specifically did not offer any solution to secure the plywood to the doorway opening, leaving it vulnerable to any movement by a person . . . or severe weather." Plaintiff further avers that the proposed repair would have left the door "inoperable and insecure[,]" and in the "case of a fire, there would be one less way to exit[.]" Plaintiff goes on to argue that the circuit court erred in finding that URLTA required Plaintiff to provide Defendants with written notice prior to availing himself of the remedies in section 66-28-502.

Plaintiff's arguments are unpersuasive. First and foremost, Plaintiff fails to address the primary deficiency in his case, which is the absence of any proof as to damages. When the circuit court questioned Plaintiff's counsel about proof of damages, counsel argued that Defendants should be assessed damages as punishment for being dilatory in complying with the general sessions court's order. Plaintiff cites no cases on appeal supporting that request. In his brief, Plaintiff cites several cases addressing residential habitability and landlord liability, but those cases all feature plaintiffs who offered proof of damages. *See, e.g.*, *Arzanzarrin v. Johnstown Props., Inc.*, No. 01-A-01-9406-CV-00259, 1994 WL 672675, at *2 (Tenn. Ct. App. Dec. 2, 1994) (plaintiff "lost several months [of] work" and suffered chronic pain after ceiling leak caused a piece of sheetrock to fall on him); *Allen v. Sulcer*, 255 S.W.3d 51, 52 (Tenn. Ct. App. 2007) (summary judgment in favor of defendant landlord reversed where tenant's child was severely injured and required open heart surgery after a tree limb, of which landlord had knowledge, fell on her); *Sneed v. Henderson*, 366 S.W.2d 758 (Tenn. 1963) (action against lessor maintainable where tenant died from carbon monoxide poisoning as a result of faulty gas refrigerator repair). None of the cases are analogous to the present matter.

Second, we agree with the circuit court that the written notice requirement contained in section 66-28-502 is plain and unambiguous. The statute provides that if a landlord has failed to provide essential services, the tenant "shall give written notice to the landlord specifying the breach" and further states that "[t]he rights under this section do not arise until the tenant has given written notice . . ." Tenn. Code Ann. § 66-28-502(a)(1), (c). Plaintiff posits in his appellate brief that "[w]ritten notice may be supplied simultaneously with the filing of a lawsuit under Tenn. Code Ann. § 66-28-502." Plaintiff derives this argument from section 66-28-502(a)(1), which states that the tenant shall give written notice "and may" seek the listed relief. Respectfully, that is not what the statute says. Subsection (c) clearly provides that a tenant's right to relief under this section does not arise until written notice has been provided to the landlord. If the filing of a lawsuit satisfied the written notice requirement, there would be no reason for the statute to include

subsection (c). Plaintiff also argues that, as a matter of course, the parties always communicated in person or over the phone and that Defendants had actual notice of problems with the HVAC. Thus, Plaintiff maintains the written notice requirement was not triggered in this case. Again, the statute's plain and unambiguous language belies that position, and Plaintiff cites no case law supporting this theory.[3] A strict construction of the statute requires this conclusion; nothing in the statute suggests that Defendants' knowledge, actual or constructive, is relevant to Plaintiff's compliance with the statute. Consequently, we affirm this portion of the trial court's ruling.

Finally, Plaintiff argues on appeal that the trial court made a material error of fact in its final ruling and that this error is fatal to the trial court's judgment. The trial court's final order provides that "Mr. Wright attempted to put air conditioning units in the property to alleviate the problem, and when that did not resolve the issue, he attempted to alleviate the problem by offering to put in a larger unit and taking out the door and covering it by plywood." Plaintiff points out that Defendants offered to install the plywood door with a mounted unit prior to the proceedings in general sessions court, not after. Accordingly, the trial court's timeline is incorrect, and Plaintiff submits that "[t]he chronological order of the events in this case is material to applicability of the law." Plaintiff also claims that this "misstatement of testimony significantly prejudiced [Plaintiff] and led to an incorrect ruling."

It is true that the trial court appears to have confused the order of events in this case. We conclude, however, that this is a harmless factual error that does not materially affect the outcome. The date on which Mr. Wright offered to install the plywood door is unrelated to the deficiencies in Plaintiff's case, namely, the lack of damages and failure to provide written notice as required by section 66-28-502. Put another way, even if the trial court had described this event correctly, it would not change the fact that Plaintiff put on no proof of damages, nor would it affect our decision as to the plain language of section 66-28-502. This issue is without merit.

For their part, Defendants claim that this appeal is frivolous and request their attorney's fees incurred on appeal.

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

---

[3] Plaintiff cites cases addressing notice requirements of other URLTA provisions, but not section 66-28-502, the section under which Plaintiff proceeds.

Tenn. Code Ann. § 27-1-122. "A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or one that has no reasonable chance of succeeding." *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) (citing *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977)). On one hand, section 27-1-122 "must be interpreted and applied strictly so as not to discourage legitimate appeals . . . ." *Davis*, 546 S.W.2d at 586. On the other hand, "[s]uccessful litigants should not have to bear the expense and vexation of groundless appeals." *Id.* Given the competing considerations, whether to award damages under section 27-1-122 rests soundly within the reviewing court's discretion. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (citing *Whalum v. Marshall*, 224 S.W.3d 169, 180–81 (Tenn. Ct. App. 2006)).

Although Plaintiff is not successful in this appeal, we cannot conclude that the appeal is altogether frivolous. Under the specific circumstances of this case, we exercise our discretion to decline Defendants' request for their appellate attorney's fees.

## CONCLUSION

The judgment of the Circuit Court for Knox County is affirmed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Mark Elliott, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE