**FILED**
**Aug 25, 2022**
**01:15 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Benjamin Grissom | ) | Docket No. 2021-05-0400 |
| | ) | |
| v. | ) | State File No. 58242-2020 |
| | ) | |
| AT&T Services, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard August 10, 2022 |
| Compensation Claims | ) | via Microsoft Teams |
| Dale A. Tipps, Judge | ) | |

### Affirmed and Remanded

The employee was injured at work when a ladder fell onto his outstretched arm. After a period of authorized medical treatment, including surgery to repair a rotator cuff tear, the treating physician recommended additional testing of the cervical spine but informed the employee that he had authority only to treat the shoulder. After seeking authorization for additional medical treatment from the employer without effect, the employee sought treatment on his own. The employee's chosen physician diagnosed a nerve entrapment condition in the injured shoulder and later offered an opinion that the medical treatment he provided for that condition was reasonable, necessary, and causally related to the work accident. Following an expedited hearing, the trial court accepted the opinion of the employee's chosen physician and ordered additional medical benefits to be provided by that physician. It also ordered the employer to reimburse certain medical costs incurred by the employee. The employer has appealed. Upon careful consideration of the record and arguments of counsel, we affirm the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Charles E. Pierce, Knoxville, Tennessee, for the employer-appellant, AT&T Services, Inc.

Stephan D. Karr, Nashville, Tennessee, for the employee-appellee, Benjamin Grissom

### Factual and Procedural Background

Benjamin Grissom ("Employee") worked for AT&T Services, Inc. ("Employer"), as a lineman. On August 26, 2020, Employee was maneuvering a ladder to secure it onto

his truck when the ladder fell and struck his outstretched right arm. According to Employee's testimony, "the full weight of the ladder fell onto that arm while it was extended." Following the accident, Employee reported experiencing "a sharp pain radiating down the arm." Employee later testified that "[i]t started at the base of the neck . . . on the right side . . . and it would radiate down to my hand." Employee attempted to continue working but had increasing symptoms, including pain and intermittent tingling in his right upper extremity.

Approximately ten days after the accident, Employee was seen by Dr. Glenn Davis at a clinic in Manchester, Tennessee. According to Dr. Davis's September 9, 2020 report, Employee complained to Dr. Davis that he "continues to have a lot of pain, intermittent tingling in his fingers." X-rays of the right shoulder revealed possible acromiohumeral impingement. Employee was taken off work pending further testing, and Dr. Davis ordered an MRI of the right shoulder, which revealed "type III acromion with impingement" and a "focal partial tear" of the right rotator cuff. Dr. Davis released Employee to return to work with restrictions as of September 14, 2020, and he recommended a referral to an orthopedic specialist. Employee selected Dr. James Rungee, an orthopedic surgeon, from Employer's panel for further evaluation and treatment.

According to Dr. Rungee's September 23, 2020 report, he interpreted Employee's MRI as showing a "20% tear of his rotator cuff and a type III acromion predisposing him to impingement." He recommended a course of physical therapy followed by an arthroscopic decompression of the right shoulder. Pending that treatment, he prescribed continued work restrictions.

Dr. Rungee performed surgery on Employee's right shoulder in November 2020. Dr. Rungee's November 16, 2020 report indicated that, during surgery, he discovered a "surprise finding of a labral tear that extended from a SLAP into a superior Bankart tear."[1] Following surgery, Dr. Rungee prescribed a course of physical therapy and recommended the use of a sling. He again released Employee to return to work with restrictions.[2]

In February 2021, Dr. Rungee noted significant improvement in Employee's range of motion and advised Employee that he anticipated releasing him to return to work without restrictions soon thereafter. However, according to Dr. Rungee's March 1, 2021 report, Employee "started developing some tingling and burning that radiates to the right side of his neck all the way into his long and ring fingers" and complained of weakness in his right

---

[1] A "Bankart tear" is "a torn labrum in the anterior shoulder joint" that can cause instability and recurrent dislocations. *See* "Bankart Tear," Center for Musculoskeletal Disorders, https://www.nynjcmd.com/shoulders/bankart-tear/ (last visited August 25, 2022).

[2] During the expedited hearing, Employee testified Employer gave him ninety days to find a new job within the company that complied with medical restrictions. He stated he "took a lesser paying job . . . so I could stay with them."

hand. X-rays of the cervical spine showed "a slight loss of cervical lordosis" but no other abnormal findings. Dr. Rungee noted this was a "new complaint" and told Employee that "this generally would be originating from his neck and not from his shoulder."[3] He recommended an EMG of the right arm but stated, "[i]t is unclear whether this would fall into the purview of his Workers' Comp claim or separate." Employee returned to Dr. Rungee's office on March 22 after having completed the EMG. Dr. Rungee reported that this test "showed evidence of possible borderline cubital tunnel syndrome, but no other radiculopathy or neuropathy." Dr. Rungee then advised Employee that "the next medical step would be to get an MRI of the cervical spine, but that does not appear to be part of this current claim for his right shoulder labral repair." Dr. Rungee ordered a functional capacity evaluation ("FCE") "to determine what he can and cannot do safely."

In his April 16, 2021 report, Dr. Rungee reviewed the results of the FCE, which showed that Employee could perform work in the "medium" physical demand category but that his physical status "does not quite reach the level of his prior job[,] and it requires some permanent restrictions." With respect to the neck and radiating pain complaints, Dr. Rungee told Employee he would be "happy to see him whether it is under Workers' Compensation or not" but that "unfortunately we cannot address that until it has been approved as a separate claim by Workers' Compensation." Dr. Rungee also stressed to Employee that "it is no less important that he [be] evaluated, diagnosed and treated" for that condition. He then released Employee to return on a "p.r.n. basis."

According to Employee's testimony, after Dr. Rungee recommended the FCE in March 2021, he contacted Employer's HR department and its workers' compensation claims representative to discuss his work status and request for an additional medical evaluation. Employee further testified that the claims representative responded, "we'll see after the FCE test." According to Employee, he never received a call back from the claims representative and never received authorization to return to Dr. Rungee for the recommended cervical spine testing or to see another physician.

Thereafter, Employee contacted a service provided by Employer that helps employees find medical specialists. Through that service, he was referred to Donald Hakes, a physician's assistant at a neurology clinic in Chattanooga. Employee first saw Mr. Hakes in September 2021. Following an initial evaluation, Mr. Hakes diagnosed cervical radiculopathy and recommended an MRI, which revealed a disc protrusion at the C5-6 level without cord compression or cervical stenosis. Significantly, in his October 12, 2021 report, Mr. Hakes added a diagnosis of suprascapular neuropathy and ordered another

---

[3] During the expedited hearing, Employee disputed Dr. Rungee's characterization of these symptoms as "new," testifying that he had previously informed Dr. Rungee and/or his staff of pain radiating down his right arm. Moreover, Dr. Rungee's report did not reflect that Employee had complained of "intermittent tingling in his fingers" within two weeks of the work accident as documented in Dr. Davis's September 9, 2020 report.

EMG. Once the results of that test were received, Mr. Hakes referred Employee to Dr. John Dorizas, a physician specializing in orthopedics and sports medicine.

In his December 6, 2021 report, Dr. Dorizas noted that Employee's EMG showed a compressed nerve in the right shoulder. Dr. Dorizas agreed with the diagnosis of suprascapular neuropathy and impingement syndrome of the right shoulder, and he ordered another MRI of that shoulder.[4] On December 29, 2021, Dr. Dorizas completed a right shoulder suprascapular nerve block. In January 2022, Employee reported to Dr. Dorizas that the nerve block had helped relieve symptoms for approximately one week, but his symptoms had returned. Consequently, Dr. Dorizas recommended surgical intervention, including a suprascapular nerve release with debridement. This surgery was performed on March 1, 2022.

With respect to the issue of medical causation, Dr. Dorizas responded to a medical questionnaire from Employee's counsel on or about February 26, 2022. In his responses, Dr. Dorizas indicated that although the testing of Employee's cervical spine was not necessitated by the work injury, the EMG and subsequent treatment for suprascapular neuropathy were "causally related to [Employee's] work injury . . . by greater than 50% considering all causes." He further explained his evaluation of Employee's case as follows:

> It is likely . . . based on my review of his case, that irritation of [Employee's] [suprascapular nerve] may have been the primary cause of symptoms from beginning. However, I do not have all of the initial records. We performed a diagnostic [suprascapular nerve] block which alleviated temp[orarily] 75% of symptoms.

Dr. Dorizas then stated that the treatment he had provided was reasonable and medically necessary. On April 27, 2022, Dr. Dorizas signed a subsequent questionnaire in which he reviewed various medical charges for treatment he had provided or ordered and stated that "all charges are necessary and reasonable."

Employee filed a request for an expedited hearing and asked the trial court to compel Employer to authorize treatment as provided by Dr. Dorizas and to order the reimbursement of medical costs incurred by Employee as a result of Dr. Dorizas's treatment. In response, Employer argued that: (1) Dr. Rungee's opinion as to medical causation was entitled to a presumption of correctness; (2) Dr. Rungee had indicated that the symptoms Employee reported after his initial surgery stemmed from a non-work-related condition; (3) Dr. Dorizas's causation opinion was flawed because he did not have a complete set of Employee's medical records to review; and (4) Dr. Dorizas's causation opinion did not overcome the presumption of correctness in favor of Dr. Rungee's opinion.

---

[4] Although Dr. Dorizas's December 6, 2021 report noted suprascapular neuropathy on the "left side," subsequent reports indicated the suprascapular neuropathy was on the right side.

4

Following the hearing, the trial court determined that Dr. Rungee had not offered a relevant causation opinion with respect to Employee's suprascapular neuropathy. The court accepted the causation opinion offered by Dr. Dorizas and determined Employee had come forward with sufficient evidence to indicate a likelihood of prevailing on this issue at trial. As a result, it ordered Employer to authorize treatment with Dr. Dorizas and to reimburse medical costs incurred by Employee as a result of Dr. Dorizas's treatment. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2021). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). Moreover, a trial court has the discretion to determine which testimony to accept when presented with conflicting expert opinions, and we review such determinations using an abuse-of-discretion standard. *Johnston v. Siskin Steel & Supply Co.*, No. E2020-00799-SC-R3-WC, 2021 Tenn. LEXIS 241, at *30-31 (Tenn. Workers' Comp. Panel Feb. 10, 2021). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2021).

**Analysis**

When a trial court is faced with conflicting expert opinions, it may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A., Inc.*, No. 2016-06-1038, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (Tenn. Workers' Comp. App. Bd. May 26, 2017). As noted above, the trial court has the discretion to determine which expert's testimony to accept when faced with conflicting expert opinions, and we review such determinations under an abuse-of-discretion standard. A trial court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009).

Initially, we note Employer's argument that when evidence upon which the trial court relied is documentary in nature, such evidence "can be subjected to a *de novo* review"

on appeal. We previously addressed the appropriate standard of review for expert medical evidence in *Moore v. Beacon Transport, LLC*, No. 2018-06-1503, 2021 TN Wrk. Comp. App. Bd. LEXIS 39 (Tenn. Workers' Comp. App. Bd. Oct. 29, 2021).[5] In response to our concurring colleague's argument that documentary expert evidence is necessarily reviewed *de novo* on appeal, we explained:

> [T]his approach ignores a substantial body of case law directing us to acknowledge the trial court's role as factfinder and accord the trial court the discretion to choose which expert offered the more probable explanation based on the totality of the evidence. This framework was discussed by the Supreme Court's Special Workers' Compensation Appeals Panel as recently as June 2021 in *Jumper v. Kellogg Co.*, No. W2020-01274-SC-R3-WC, 2021 Tenn. LEXIS 175 (Tenn. Workers' Comp. Panel June 23, 2021), a case in which the expert medical proof was by deposition: "When presented with conflicting expert opinions, a trial court *has discretion* to determine which testimony to accept . . . . A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical result, or bases its decision on a clearly erroneous assessment of the evidence." *Id.* at *17-18 (internal citations omitted). The Tennessee Supreme Court adopted the Appeals Panel's opinion in *Jumper* as its own. *See Jumper v. Kellogg Co.*, No. W2020-01274-SC-R3-WC, 2021 Tenn. LEXIS 174 (Tenn. June 23, 2021).

*Id.* at *7 n.1; *see also Lavender v. Saturn Corp.*, No. M2002-00759-SC-R3-CV, 2003 Tenn. LEXIS 348, at *4 (Tenn. Workers' Comp. Panel May 5, 2003) ("We may make an independent assessment of the medical proof which is submitted by depositions, reports or records. We do not, however, disagree with the discretion exercised by the trial judge in this regard unless the record clearly shows an abuse of this discretion.").

Hence, we conclude a reviewing court can conduct a *de novo* review of documentary evidence, including expert depositions, in assessing where the preponderance of the evidence lies. With respect to the trial court's ultimate determination, however, the reviewing court is to acknowledge the trial court's discretion to evaluate which expert's opinion offered the more probable explanation based on the totality of the evidence presented to the court and is to review such a determination under an abuse-of-discretion standard.

### Expert Medical Opinions

In its notice of appeal, Employer presented the disputed issues as whether the trial court erred "in finding that benefits were owed for the alleged neck injury" and whether "the presumption of correctness of the authorized treating physician had been overcome."

---

[5] Our decision in *Moore v. Beacon Transport, LLC* is currently on appeal to the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel.

6

In its brief, Employer restated the first issue as whether the trial court erred in finding that "Dr. Dorizas presented the only relevant opinion as to causation *of the neck and finger complaints*." (Emphasis added.) This re-stating of the issue is relevant to our analysis as it highlights the lack of a diagnosis as of the date of Dr. Rungee's final report. While we agree with Employer that Dr. Rungee was a panel-selected authorized treating physician whose causation opinion is entitled to a presumption of correctness, we also agree with the trial court that Dr. Rungee offered no such opinion with respect to Employee's diagnosed condition of suprascapular neuropathy. A close reading of Dr. Rungee's March 1, 2021 report supports this conclusion. Dr. Rungee recorded what he described as "new" complaints, and he speculated that those complaints likely stemmed from a cervical spine condition. However, he offered no diagnosis and did not address the cause or causes of any such diagnosed condition. He recommended additional testing to assist in diagnosing the condition but stated he was unsure whether such testing would be covered under Employee's workers' compensation claim.

Moreover, in his March 22, 2021 report, Dr. Rungee noted Employee's continued complaints of radiating pain and tingling in his right upper extremity but stated "this *does not appear* to be part of his current claim." (Emphasis added.) He then advised that, in his opinion, if Employee had suffered a neck injury during the work accident, "I *would suspect* he would have symptoms [long] before just a month ago." (Emphasis added.) These statements, which form the basis of Employer's arguments regarding causation, are speculative and do not address the cause of Employee's suprascapular neuropathy. Simply put, as of March 22, 2021, when Dr. Rungee made those statements, Employee's radiating pain symptoms and tingling in the right upper extremity had not been evaluated. No additional diagnostic testing had been performed to assess these complaints and no diagnosis had been made. In fact, none of Dr. Rungee's reports mention suprascapular neuropathy as a potential diagnosis. It is incongruous for Employer to argue that Dr. Rungee offered a causation opinion for a condition that had not yet been diagnosed.

In preparation for the expedited hearing, neither party chose to depose a medical expert. Instead, the parties agreed to submit medical records in support of their respective positions as evidence. Consequently, there is nothing in the record to indicate Dr. Rungee was given the opportunity to review additional diagnostic testing, Dr. Dorizas's medical records, or the surgery report. Dr. Rungee was not given the opportunity to address whether he agreed with the diagnosis of suprascapular neuropathy, and he was not asked to address the cause or causes of that condition. In short, there is nothing in the record to contravene Dr. Dorizas's causation opinion regarding Employee's suprascapular neuropathy.

Our conclusion regarding Dr. Rungee's statements, however, does not end the inquiry. Even without consideration of Dr. Rungee's records, Employee had the burden of coming forward with sufficient evidence of causation to support the trial court's determination that he was likely to prevail on this issue at trial. Thus, we must assess whether the trial court erred in concluding that Dr. Dorizas's causation statements satisfied

Employee's burden. In this regard, Employer takes issue with Dr. Dorizas's responses to a medical questionnaire submitted by Employee's counsel. Although Dr. Dorizas indicated in his responses that Employee's suprascapular neuropathy was causally related to the work accident "by greater than 50% considering all causes," he also indicated in his handwritten explanation that he did not have "all of the initial records." Yet, as noted above, the initial records from Dr. Davis corroborate Employee's testimony that he complained of tingling down his right arm and into his fingers within two weeks of the work accident. Nothing in the record refutes Dr. Dorizas's diagnosis of a nerve entrapment in his right shoulder, and nothing refutes Employee's testimony that the suprascapular nerve decompression performed by Dr. Dorizas improved Employee's symptoms significantly. Thus, the record in this case supports a conclusion that Dr. Dorizas diagnosed a nerve entrapment in the right shoulder that he believed was primarily caused by the work accident and that his treatment for that condition led to significant improvement in Employee's condition. Under the circumstances, we agree with the trial court's determination that Employee came forward with sufficient evidence to indicate a likelihood of prevailing on this issue at trial.

*Frivolous Appeal*

Finally, Employee asserts Employer's appeal is frivolous for several reasons: (1) Employer took no expert medical depositions; (2) Employer did not offer any responses from Dr. Rungee to a medical questionnaire to counter the opinions offered by Dr. Dorizas; (3) Employer conducted very little cross-examination of Employee during the expedited hearing; and (4) Employer offered no exhibits in addition to the ones submitted by Employee prior to or during the expedited hearing. In Employee's view, Employer's appeal had no reasonable chance of succeeding for the reasons noted above and should therefore be deemed frivolous.

With respect to Employee's argument on this issue, we note that a party and/or its counsel is entitled to make strategic decisions regarding the nature and extent of evidence it chooses to present at any given hearing. In circumstances where that party does not bear the burden of proof, there may be various reasons not to submit additional evidence or cross-examine opposing witnesses, and, absent extraordinary circumstances, it is not our role to second guess such strategic decisions.

A frivolous appeal is one that is devoid of merit, *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), one that has no reasonable chance of succeeding, *Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977), or one that is brought solely for delay, *Yarbrough v. Protective Servs, Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 25, at *14-15 (Tenn. Workers' Comp. App. Bd. May 27, 2016). *See also* Tenn. Comp. R. & Regs. 0800-02-22-.09(4) (2020). As the Tennessee Supreme Court noted in *Davis*, a frivolous appeal is "recognizable on its face as devoid of merit" if the appeal "presents no justiciable questions." *Davis*, 546 S.W.2d at 586. We conclude this case does not rise to that level. There is a colorable argument that Dr.

8

Rungee's statements calling into question whether Employee's radiating pain and tingling in the right arm and hand were related to the work accident contradicted the opinions offered by Dr. Dorizas. Moreover, Employer had a colorable argument that Dr. Dorizas's lack of access to a complete set of Employee's medical records weakened his causation opinion. This appeal required us to assess whether the trial court erred in its consideration of the expert proof at an interlocutory stage of the case. Thus, we conclude this appeal is not frivolous.

## Conclusion

For the reasons set out above, we affirm the trial court's order in all respects and remand the case. We further conclude that this appeal is not frivolous. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | | |
|---|---|---|---|
| Benjamin Grissom | ) | Docket No. 2021-05-0400 | |
| | ) | | |
| v. | ) | State File No. 58242-2020 | |
| | ) | | |
| AT&T Services, Inc., et al. | ) | | |
| | ) | | |
| | ) | | |
| Appeal from the Court of Workers' | ) | Heard August 10, 2022 | |
| Compensation Claims | ) | via Microsoft Teams | |
| Dale A. Tipps, Judge | ) | | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 25th day of August, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Charles E. Pierce | | | | X | cepierce@mijs.com<br>jdhaynes@mijs.com |
| Stephan D. Karr | | | | X | steve@flexerlaw.com<br>cindy@flexerlaw.com |
| Dale A. Tipps, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov